Robert R. YORK, et al., Plaintiffs–
Appellees Cross–Appellants,

v.

CITY OF WICHITA FALLS, TEXAS,
Defendant–Appellant Cross–
Appellee.

No. 90–1817.

United States Court of Appeals,
Fifth Circuit.

Oct. 11, 1991.

Gregory D. Humbach, City Atty., Wichita Falls, Tex., Bettye S. Springer, Mark H. Hoppe, Haynes & Boone, Ft. Worth, Tex., for defendant-appellant cross-appellee.

Gregory K. McGillivary, Thomas A. Woodley, Mulholland & Hickey, Washington, D.C., for plaintiffs-appellees cross-appellants.

Before CLARK, Chief Judge, GOLDBERG, and GARWOOD, Circuit Judges.

CLARK, Chief Judge:

I.

The City of Wichita Falls (City) appeals the district court's grant of summary judgment in favor of the plaintiffs on their claim that the City violated § 8 of the 1985 amendments to the Fair Labor Standards Act (FLSA). 29 U.S.C. § 215 (Supp.1989) (Historical and Statutory Notes). The plaintiffs cross-appeal the district court's determination of damages. Summary judgment was improper. The judgment appealed from is vacated and the cause is remanded for further proceedings.

II.

On February 19, 1985, the Supreme Court in *Garcia v. San Antonio Metro Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), held that the FLSA applies to state employers (*i.e.*, states or their political subdivisions which employ workers), and thus, state employers are obligated to pay their employees overtime at the same rate required for covered private employers.[1]

So that the financial impact of the overtime obligations of the FLSA would not overwhelm state employers, Congress, in November 1985, passed amendments to the FLSA giving state employers certain exceptions and postponing the effective date of the FSLA's overtime obligations to April 15, 1986. In § 8 of the amendments, Congress prohibited state employers from discriminating against an employee for asserting coverage under the FLSA. Section 8 provides:

> A public agency which is a State, political subdivision of a State, or an interstate governmental agency and which discriminates or has discriminated against an employee with respect to the employee's wages or other terms or conditions of employment because on or after February 19, 1985, the employee asserted coverage under section 7 of the Fair Labor Standards Act of 1938 [section 207 of this title] shall be held to have violated section 15(a)(3) of such Act [subsec. (a)(3) of this section]. The protection against discrimination afforded by the preceding sentence shall be available after August 1, 1986, only for an employee who takes an action described in section 15(a)(3) of such Act [subsec. (a)(3) of this title].

29 U.S.C. § 215 note (West Supp.1991) (Historical and Statutory Notes), Pub.L. No. 99–150, § 8, 99 Stat. 791 (Nov. 14, 1985).

---

1. *Garcia*, 469 U.S. at 557, 105 S.Ct. at 1020–21, overruled the Supreme Court's decision in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976).

The City of Wichita Falls was told about *Garcia* in a conversation that Battalion Chief Gary Broyles had with the Fire Chief. Chief Broyles, also president of the International Association of Fire Fighters, Local 2186, showed the Fire Chief a memo discussing *Garcia* and asked if the fire fighters were due any overtime pay under *Garcia.* After this conversation, but before the amendments to FLSA were enacted, the City reduced its fire fighters' hourly wage rate in order to offset the increased cost of fire fighters' wages that would result when compensation at overtime rates was paid for overtime hours which were part of their regular work schedule. The City contended it chose to avoid additional financial expense in that way instead of reducing each fire fighters' yearly income or reducing fire fighting forces or equipment.

All 139 fire fighters employed by the City brought this action under § 8 complaining that the City unlawfully reduced their wage rate in response to their assertion of coverage under the FLSA. On cross motions for summary judgment, the district court ruled that Congress intended that § 8 be applied retroactively. *York v. City of Wichita Falls,* 727 F.Supp. 1076, 1079 (N.D.Tex.1989). The court determined that § 8 applied to actions taken by employers occurring between February 15, 1985, the date the Supreme Court decided *Garcia,* and November 14, 1985, the date on which § 8 was enacted. The court concluded that the City's pay revision was subject to scrutiny under § 8. The court further held that § 8 did not require that an employee (the fire fighters) prove that the employer (the City) acted with a discriminatory or retaliatory intent in reducing the wages. It was sufficient, in the court's view, that the City sought to circumvent the impact of the *Garcia* decision. *York,* 727 F.Supp. at 1080.

The court found that Battalion Chief Broyles properly asserted coverage on behalf of all the fire fighters. The court held that neither "Fire Captains" nor "Battalion Chiefs" were bona fide executives who would be exempt from coverage. Thus, the court determined that the City was obligated to pay overtime to these captains and chiefs pursuant to the FLSA.

The court calculated damages in a separate order. It awarded compensatory damages and "liquidated damages" in the amount of 20% of compensatory damages for post-April, 1986 work. However, the court declined to include leave time in the computation of overtime damages.

## III.

On appeal the City argues that the district court erred in concluding that (a) § 8 of the 1985 amendments applies retroactively to their action, (b) § 8 does not require a showing of discriminatory intent or motive, (c) the fire fighters asserted coverage within the meaning of § 8, and (d) the fire captains and battalion chiefs were not executive employees exempt from the coverage under the FLSA. The fire fighters' cross appeal contends that the district court erred in allowing the City to exclude holiday, vacation and sick leave hours from the total hours worked when calculating the amount of overtime pay due. We address each of these claims in turn. This court reviews the issues presented on appeal from summary judgment *de novo. Trial v. Atchison, Topeka & S.F.R. Co.,* 896 F.2d 120, 122 (5th Cir.1990).

### A. Retroactivity

The district court applied § 8 to the City's new pay plan instituted on May 24, 1985. The City asserts that the language of § 8 does not clearly indicate that § 8 is to apply retroactively to municipal employers' actions which occurred before the date of its enactment, November 14, 1985, and that, *if § 8 is construed as applicable to such actions, it is unconstitutional.* We disagree.

■■■ When determining the intended operation of a statute, questions of retroactivity, like all others, are determined in the first instance by the statute's plain wording. If the statute is unambiguous, the inquiry into its intended operation is at an end. *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246

(1981). The provisions of § 8 clearly indicate that the statute applied to the City's actions of May 24, 1985. In this case, the legislative history of § 8 reinforces the plain wording.

Section 8 applies when a local governmental employer "discriminates or has discriminated against an employee ... because on or after February 19, 1985, the employee or employees asserted coverage" under the FLSA. This court, in interpreting this provision, has concluded that § 8 was "in effect from February 19, 1985." *Hendrix v. City of Yazoo City*, 911 F.2d 1102 (5th Cir.1990). The purpose of § 8 was to deter state and municipal employers from discriminating against employees for asserting rights under the FLSA after the Supreme Court issued the *Garcia* decision and before the other provisions of the 1985 amendments took effect.

The City contends the legislative history indicates that § 8 was not intended to be applied retroactively. The Joint Explanatory Statement of the Committee of Conference, House Conference Report No. 99–357, states that § 8 was "intended to remain neutral with respect to any action by employees challenging the lawfulness of the employers' unilateral reduction of regular pay or fringe benefits instituted prior to enactment" of § 8. The City's construction of this statement is incorrect. This language merely indicates that lawsuits by employees challenging employers' actions which were "instituted prior" to the enactment of § 8 should be viewed in the same light as those brought after § 8 became effective. *See* 131 Cong.Rec. H9916 (daily ed. Nov. 7, 1985) (statement of Rep. Boulter).

The City also claims that the retroactive application of § 8 is unconstitutional. The City did not argue this claim to the district court. Because we determine below that this case should be remanded to the district court on other grounds, we pretermit any ruling on the City's constitutional claim. If it is raised on remand, the district court may examine it in the first instance.

**B. Discriminatory Intent.**

The district court concluded that a violation of § 8 is established when a plaintiff shows that a state or local governmental employer unilaterally alters a pay plan or lowers wages in response to an application of the FLSA. *York*, 727 F.Supp. at 1080. The court reasoned that neither proof of intent to discriminate nor proof of intent to retaliate against an employee who asserts coverage is required to establish such a violation. The City argues that the district court ignored the plain wording of § 8 and its supporting legislative history in so concluding. We agree.

Section 8 had a narrow window of application. It operated in the interval between the decision of *Garcia* and the adjustment of cities to the new FLSA coverage. It sanctioned an employer who *"discriminates or has discriminated against an employee ... because ... the employee asserted coverage under [the FLSA]."* (Emphasis added). On its face, this language is direct and clear. *Webster's Third New International Dictionary* defines "because" to mean "for the reason that" and "on account of the cause that." "Because" is used to tie together dependent clauses. An employer who discriminates against an employee "because" the employee asserts a FLSA right does so "for the reason that," "on account of the cause that" the employee asserts that right. An employee claiming a violation of § 8 must show that an employer's discriminatory action against the employee was an improper response to the employee's assertion of coverage. In the absence of express legislative language to the contrary, discrimination because coverage was asserted plainly requires a showing of retaliation for the assertion of a right.

Intent is implicit in retaliation. Taking an-eye-for-an-eye cannot be accidental or inadvertent conduct. Certainly Congress did not intend to create and impose a retroactive sanction on unintentional action by inference. Even legislation making unintentional action a violation of a law already

passed must be express.[2] *A fortiori* express language should be required to create a retroactive violation.

Assuming *arguendo,* that resort to legislative history is necessary to construe how § 8 was intended to apply to pre-enactment conduct, the most significant legislative history is the Joint Explanatory Statement of the Committee of Conference of H.R.Conf.Rep. No. 357, 99th Cong., 1st Session 7, 8 (1985), *reprinted in* 1985 U.S.C.C.A.N. 651,670. It states in part:

> The antidiscrimination provision is meant to apply where one or more employees are singled out for adverse treatment *in retaliation for* an assertion that they are covered by the overtime provisions of the FLSA.... [T]he actual victims of discrimination *must show* that coverage was asserted and they *must also show* actual discrimination, i.e., that the employer's action constituted *retaliation* for the employee or employees' assertion of coverage and avoidance of the asserted protections of Federal law....
>
> \*　\*　\*　\*　\*　\*
>
> A unilateral reduction of regular pay or fringe benefits that is *intended* to nullify this legislative application of overtime compensation to State and local government employees is unlawful. Any other conclusion would in effect invite public employers to reduce regular rates of pay *shortly after the date of enactment* so as to negate the premium compensation mandated by this legislation.

(Emphasis added). Our understanding of this explanation confirms the view that intent to violate "this legislative application" of FLSA is a necessary part of a plaintiff's proof.

The district court relied in part on *Blanton v. City of Murfreesboro,* 856 F.2d 731, 734–36 (6th Cir.1988) in reaching a contrary conclusion. The acts of the City of Murfreesboro which were involved there occurred in April 1986, well after the November 13, 1985 enactment date of § 8. Wichita Falls, however, implemented its new program in June 1985. Because the time of the employers' actions were distinct, we distinguish the Sixth Circuit's holding.

After looking to the legislative record, *Blanton* constructed § 8 not to require intentional action. It drew this conclusion from portions of the Conference report and floor remarks by Conference Chairman Hawkins. *Id. Blanton* also relied on a 1986 Department of Labor memorandum.

The action which the Conference Statement said it condemned was "actual discrimination, *i.e.,* ... retaliation" or a reduction of regular pay that was intended to nullify § 8. The one floor remark by Representative Hawkins, the Chairman of the Conference Committee, concerning intent, does not specifically deal with actions taken prior to the action of Congress.[3]

The 1986 Department of Labor (DOL) memorandum on which *Blanton* relied would not support a similar conclusion that intent was not required in the Wichita Falls fact situation. The memorandum states:

> The legislative history suggests an effective date of November 13, 1985 ... with respect to nonresponsive unilateral pay rate reductions. The legislative history ... refers to a unilateral pay reduction "that is intended to nullify *this legislative application of overtime compensation* " (emphasis added), and denounces public employers' reduction of regular pay rates *"shortly after the date of enactment* so as to negate the premium compensation *mandated by this legislation."* (emphasis added).

**2.** *Cf. Mobile v. Bolden,* 446 U.S. 55, 100 S.Ct. 1490, 64 L.Ed.2d 47 (1980). The language in § 8 parallels the version of § 2 of the Voting Rights Act on which *Bolden* was based.

**3.** Remarks on the floor varied. *See e.g.,* the statement of Representative Jeffords, 131 Cong. Rec. H9327 (daily ed. Oct. 28, 1985):

> If a City or State is operating with limited resources and is suddenly faced with new, unexpected overtime costs and requirements, it may reasonably come to the conclusion that it must reduce its regular rate of pay so as to maintain the level of its payroll when overtime costs are added into that payroll.... I do not believe that anything within this bill precludes this response to the *Garcia* decision. I would be happy to yield to any Member who has a different view. [*No response*].

Memorandum from George R. Salem to Susan R. Meisign, Deputy Under Secretary for Employment Standards 4 (Nov. 26, 1985). Thus, it can be seen that the same memorandum on which the Sixth Circuit relies in finding intent was not required in Blanton's case supports this Court's contrary conclusion for Wichita Falls' reductions.

To prove that pre-enactment actions violated § 8, a plaintiff must show that (1) he or she is an employee covered by the act, (2) he or she asserted coverage under the FLSA on or after February 19, 1985, and (3) the state or local governmental employer's action was intended to discriminate because of the assertion of coverage.

## C. Assertion of Coverage.

The district court concluded that the assertion of coverage requirement should be liberally construed and that Battalion Chief Broyles' conversation with the Fire Chief sufficed as an assertion of coverage for all fire fighters and triggered the application of § 8. The City contends that Broyles' conversation did not constitute an assertion of coverage for any employee because Broyles was a salaried executive, not an employee, under the FLSA. The City also argues that an assertion of coverage by one employee does not constitute an assertion of coverage for any other employee. The fire fighters maintain that Broyles' conversation with the Fire Chief was adequate to assert coverage for all fire fighters, even assuming that Broyles was an executive employee ineligible for coverage under the FLSA. We agree.

■ The district court construed the assertion of coverage language as nothing more that a notice requirement. *York*, 727 F.Supp. at 1079. However, such a liberal construction is not consistent with the plain language of § 8. Because § 8 prohibits an employers' retaliatory acts because an employee asserts coverage, the employee must take some actions which a reasonable employer would consider an assertion that employees are entitled to the overtime pay or other benefits conferred by the FLSA.

The evidence indicated that Broyles asked the Fire Chief if the fire fighters were entitled to overtime pay because of the Supreme Court's decision in *Garcia*. This inquiry, if proved on remand, could constitute a reasonable assertion of coverage.

■ One employee may assert coverage on behalf of all. "The provision, [§ 8], is also intended to apply where an employer's response to the assertion of coverage [by an employee] is to reduce the wages ... for an entire unit of employees." Joint Explanatory Statement of the Committee of Conference, H.R. Conf. Rep. No. 357, 99th Cong., 1st Sess. 7, 8 (1985), *reprinted in* 1985 U.S.C.C.A.N. 651, 670.

The fact that the person who asserted coverage may ultimately be deemed exempt from the FLSA is not fatal. Battalion Chief Broyles was not a casual commentator or busy body. He was a union leader for the fire fighters and reasonably should have been viewed as a spokesman for the fire fighters as a whole. Consistent with these principles, whether the evidence developed about Broyles' conversation with the Fire Chief can be reasonably construed as an assertion of coverage is a matter for the district court to determine on remand.

## D. Exempt Employees.

The district court determined that the City failed to offer sufficient summary judgment proof to carry the burden of establishing that the fire captains and battalion chiefs were bona fide executives under § 213(a)(1) of the FLSA, 29 U.S.C. § 201 *et seq.*, and therefore exempt from the overtime requirements. The City argues that its evidence on this issue was sufficient to withstand summary judgment. We agree.

■ The FLSA excludes from its overtime requirements those employees working in a bona fide executive, administrative or professional capacity. 29 U.S.C. § 213(a)(1). To qualify as a bona fide executive, the employer must prove the following: (1) that the employee is compensated on a salary basis of not less than $250 per week (the "salary test"), (2) that the employee is primarily responsible for manage-

ment duties, and (3) the employee customarily and regularly directed the work of two or more other employees (collectively the "duties test"). 29 C.F.R. § 541.1; *Abshire v. County of Kern*, 908 F.2d 483 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991).

■ With respect to the exempt status of the fire captains, the district court held that the City failed to

> preclude an issue of material fact, *i.e.*— to show that they meet every aspect of the executive exemption. The fire captains perform the same duties of those employees they supervise 70 to 80% of the time. Further, they do not regularly exercise discretion and independent judgment. Their duties are defined by rules and other regulations.

727 F.Supp. at 1081–82.

However, the fact that a fire captain may spend a significant portion of his time performing ministerial or routine tasks does not foreclose him from qualifying as a bona fide executive. *See Hartman v. Arlington County, Virginia*, 720 F.Supp. 1227, 1228 (E.D.Va.1989) (fire shift commander was a bona fide executive within meaning of FLSA), *aff'd on reasoning of lower court*, 903 F.2d 290 (4th Cir.1990).

With respect to the battalion chiefs, the district court found that they performed executive duties but that the City had not established that they were salaried employees, 727 F.Supp. at 1082. The fire fighters do not challenge that conclusion. Notwithstanding the executive nature of their job duties, both the fire captains and battalion chiefs may not be exempt if they were not salaried employees. *See Abshire*, 908 F.2d at 486. That determination turns on whether they were paid on an hourly basis.

The City introduced evidence that the fire captains and battalion chiefs were salaried employees. The fire fighters argue that the fire captains and battalion chiefs were not salaried but were paid on the same hourly basis as every other employee. The record shows that their sick leave and vacation time were deductible in one-hour increments and that they were paid overtime when called to duty outside of their regular schedules (which included overtime hours). These factors persuaded the court in *Abshire* to hold that battalion chiefs were not salaried employees. *See Abshire*, 908 F.2d at 486.

The City's Personnel Director's affidavit states that the City did not have a policy of docking salaried employees' pay. Battalion Chief Howard testified that his pay was not docked when he served on jury duty. None of the testifying Battalion Chiefs or Fire Captains were aware of any employee in the City's Fire Department whose compensation had been reduced for using less than a full shift of sick or vacation time. The summary judgment would support a finding that Battalion Chiefs' and Fire Captains' monthly salary is not subject to deductions in less than one day increments. If a Battalion Chief or Fire Captain took an hour off work, his compensation remained the same and the time was deducted from his sick or vacation leave on an hourly basis. The relevant regulations provide that such deductions do not establish that a person is paid on a wage basis. 29 C.F.R. § 541.118(b). Paying an hourly rate for each hour worked beyond the regular schedule does not defeat the executive exemption. *See Hartman*, 720 F.Supp. at 1229.

Determination of the fire captains' and battalion chiefs' salary status required resolution of an issue of material fact. Summary judgment was improper.

*E. Liquidated Damages.*

The fire fighters' claim that the district court erred in excluding their leave time from the time worked in the computation of their overtime damages. The City argues that the district court erred in awarding liquidated damages because the City was acting in good faith in revising the fire fighters' pay plan. Because we consider the grant of summary judgment improper, no decision on these issues is necessary.

### IV.

The district court's order granting summary judgment for the plaintiffs is VA-

CATED and the cause is REMANDED for further proceedings consistent with this opinion.

VACATED and REMANDED.