**Robert R. YORK, et al., Plaintiff,**

v.

**CITY OF WICHITA FALLS, TEXAS, Defendant.**

Civ. A. Nos. 7:87–CV–020–K, 7:90–CV–004–K.

United States District Court, N.D. Texas, Wichita Falls Division.

June 17, 1994.

Gregory K. McGillivary, Thomas D. Woodley, Mulholland & Hickey, Washington, DC, for plaintiff.

Bettye S. Springer, Terry Boone, Haynes & Boone, Fort Worth, TX, Gregory Humbach, Wichita Falls, TX, for defendant.

*MEMORANDUM OPINION UPON*
*TRIAL BY THE COURT*

BELEW, District Judge.

These consolidated cases were heard by the Court on February 22, 1994 on remand from the Court of Appeals. The Court of Appeals vacated a grant of summary judgment reported at *York v. City of Wichita Falls, Texas,* 727 F.Supp. 1076 (N.D.Tex. 1989) (Robinson, J.). In the Fifth Circuit's opinion, the court clarified the law to be applied to these claims and remanded for trial. *York v. City of Wichita Falls, Texas,* 944 F.2d 236 (5th Cir.1991).

The Plaintiffs in this suit are fire fighters for the City of Wichita Falls, Texas. They are suing the City for overtime they claim is due to them after the Supreme Court applied the Fair Labor Standards Act to state and local government employees in *Garcia v. San Antonio Metro Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985).

The Plaintiffs make two claims in their Complaint. First, they claim they are hourly wage earning employees whom the City unlawfully discriminated against in violation of Section 8 of the Fair Labor Standards Act (FLSA) by recalculating, and lowering, their hourly wages in order to comply with Section 8 of the FLSA. 29 U.S.C. § 215 note, Pub.L. No. 99–150, § 8, 99 Stat. 791 (Nov. 14, 1985).

Second, the Plaintiffs claim that if they are salaried employees, the City has either improperly calculated the amount of overtime due to them or failed to pay them due overtime in violation of Section 7 of the FLSA.

29 U.S.C. § 207, Pub.L. No. 99–150, § 7, 99 Stat. 791 (Nov. 14, 1985).

After carefully weighing the parties' evidence, arguments, authority and law presented to the Court, the Court finds for the Defendant City of Wichita Falls, Texas for reasons discussed below.

## I. *FACTUAL AND REGULATORY BACKGROUND*

In February of 1985, the Supreme Court decided *Garcia v. San Antonio Metro Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, requiring state and municipal employers to comply with the wage and hour provisions of the Fair Labor Standards Act. The FLSA, codified at 29 U.S.C. § 201 *et seq.,* requires any employee working over 40 hours in a week to be paid overtime, premium compensation at the rate of one and one-half their "regular rate" of pay. 29 U.S.C. § 207(a)(1). An employee's regular rate of pay is "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." *Walling v. Younger-man–Reynolds Hardwood Co.,* 325 U.S. 419, 425, 65 S.Ct. 1242, 1245, 89 L.Ed. 1705 (1945). For salaried employees, the regular rate is determined by converting their annual pay rate to its non-overtime hourly equivalent by simply dividing one by the other. 29 C.F.R. § 778.113(b).

While FLSA Section 7(a) mandates time and a half for hours worked over 40, Section 7(k) sets higher hourly standards for public safety employees like fire fighters. 29 U.S.C. § 207(a) and (k). In the 14 day period Wichita Falls uses, fire fighters are required to be paid overtime only when they work more than 106 hours. 29 C.F.R. § 553.230. Since the fire fighters were scheduled for 112 hours in the 14 day period, they would receive 6 hours of overtime compensation. *Id.*

On November 14, 1985, Congress alleviated *Garcia*'s fiscal effect on state and municipal governments by amending Section 7 so that state and municipal employers would not be required to pay overtime until April 15, 1986. 29 U.S.C. § 207, Pub.L.No. 99–150, § 7, 99 Stat. 791 (Nov. 14, 1985).

This grace period was accompanied by amendments to Section 8 making it illegal for any employer to discriminate against an employee who, on or after February 19, 1985, asserted coverage under the FLSA. 29 U.S.C. § 215 note.

The Plaintiffs make alternate claims against Wichita Falls. They allege, first, that the City violated the anti-discrimination provisions of § 8 of the FLSA by recalculating, and lowering, their hourly wages after they demanded they be paid overtime. In the alternative, the Plaintiffs allege that the City's recalculation of their pay violated § 7 of the FLSA as described below. The specific facts that give rise to these claims are these.

In early March of 1986, plaintiff Battalion Chief Gary Broyles, in his capacity as President of the Wichita Falls Professional Fire Fighters Association, an affiliate of the International Association of Fire Fighters, began to receive information from the International about the Supreme Court's *Garcia v. San Antonio Metro Transit Authority* decision. It appearing that the fire fighters were entitled to overtime compensation, Broyles approached Wichita Falls' Fire Chief Jim Jameson regarding the applicability of *Garcia* to Wichita Falls' firemen. Broyles' discussions with Chief Jameson are of great import to this case. Unfortunately, Chief Jameson died in January 1987 after a long illness and neither party deposed him to preserve his testimony on these matters. Broyles, and other witnesses for the plaintiffs, indicated that Chief Jameson read materials and ultimately told Broyles that it looked like the fire fighters were entitled to *Garcia* overtime.

The City objected to the admission of any out of court statement by Chief Jameson as inadmissible hearsay. The City also disputes whether Chief Jameson was the proper city official for Broyles to address *Garcia* concerns.

On May 24, 1985, the City recalculated the firemen's pay, reducing their nominal hourly wages so that when overtime was included,

the fire fighters' total annual pay remained the same and the City's budget was not affected. The City says this recalculation was recommended at a May 3, 1985 seminar in Dallas informing municipalities how to comply with *Garcia*.

## II. *FINDINGS OF FACT AND CONCLUSIONS OF LAW*

For clarity and coherence, the Court will first address Plaintiffs' claims under FLSA § 8, and then address their FLSA § 7 claims.

### A. PLAINTIFFS' FLSA SECTION 8 DISCRIMINATION CLAIMS

Wichita Falls recalculated the Plaintiffs' pay rates in May of 1985, after the *Garcia* decision in February and before Congress amended the statute in November to prevent retaliation. However, Congress retroactively applied its anti-discrimination amendments to § 8 to February 19, 1985, the date *Garcia* was announced.

As stated above, this case is tried on remand from the Fifth Circuit. In its opinion interpreting the 1985 amendments to FLSA § 8, the Court of Appeals held that

> [t]o prove that pre-enactment actions violated § 8, a plaintiff must show that (1) he or she is an employee covered by the act, (2) he or she asserted coverage under the FLSA on or after February 19, 1985, and (3) the state or local government employer's action was intended to discriminate because of assertion of coverage.

*York*, 944 F.2d at 241.

The Court will examine each of the *York* elements in turn.

### 1). Are the Plaintiffs Covered by the FLSA?

■ The Plaintiffs,[1] in March 1985, were employed as fire fighters for the City of Wichita Falls. Pursuant to *Garcia*, the Plaintiffs are covered by the all the provisions of the Fair Labor Standards Act, in-

---

1. The Plaintiffs in the consolidated case, 7:90–CV–004–K were not members of the Wichita Falls Fire Department in 1985. They are, however, covered by the FLSA pursuant to the Court's analysis below.

cluding § 8's retroactive anti-discrimination provision.

The City argues, however, that it is unconstitutional to retroactively apply § 8 to it, citing the Fifth Amendment's due process protections and the Tenth Amendment's state sovereignty guarantees.

The City claims it would be unconstitutionally arbitrary, violating its due process rights, to apply an amendment enacted in November 1985 to the City's actions in May of that year. Wichita Falls correctly points out that retroactive legislation is disfavored and that the Constitution requires Congress to act with a rational purpose rather than arbitrarily or irrationally. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976).

The City seems to further argue that because the complained of events had already occurred, § 8 has no deterrent effect to prevent wage recalculation and is therefore arbitrary.

The Court rejects the City's Fifth Amendment arguments. First, the FLSA, without § 8's anti-discrimination protection, did apply the to Plaintiffs in May 1985 by virtue of *Garcia* and § 7 and the Code of Federal Regulations did control pay recalculations. *See Walling v. A.H. Belo Corp.*, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716 (1942) and *Brennan v. Elmer's Disposal Service, Inc.*, 510 F.2d 84, 86 (5th Cir.1975).

Congress' November amendments, in effect, overturned or stayed *Garcia* for implementation in April 1986. Congress added § 8's anti-discrimination provisions to prevent "employers who voluntarily complied prior to April 1986 [from] negat[ing] their past compliance" by either recovering, or threatening to recover pre-April 1986 wages from their employees. Joint Explanatory Statement of the Committee of Conference, H.R.Conf.Rep. No. 357, 99th Cong., 1st Sess. 7, 8–9 (1985), *reprinted in* 1985 U.S.C.C.A.N. 651, 670. Therefore, Congress' rational reason for retroactivity was to protect the very employees whose FLSA coverage was delayed. The Court rejects the City's Fifth Amendment arguments.

The City also asks the Court to distinguish *Garcia* on Tenth Amendment state sovereignty grounds that federal regulation of Wichita Falls' fire fighters pay scale is far more intrusive into local governmental finances than extending FLSA coverage for San Antonio's bus drivers. The City bases its arguments on a fine parsing of *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976).

The Court declines to overturn the Supreme Court's decision in *Garcia* which directly overruled *National League of Cities*. Accordingly, the Court finds no Constitutional infirmity in the retroactive application of the FLSA.

**2). Did Plaintiffs Assert Coverage On or After February 19, 1985?**

■ The Plaintiffs contend that in early March, 1985 Plaintiff Battalion Chief Broyles began to receive information from the International about the Supreme Court's recent *Garcia* decision. This information indicated that Wichita Falls might now owe the fire fighters overtime wages. Broyles then took this material to Chief Jameson, gave him copies and asked the Chief whether he thought the City owed the fire fighters overtime pay.

The Fifth Circuit's opinion requires the Plaintiffs to have asserted FLSA coverage to pursue damages under Section 8. In its opinion, the court discussed Broyles' asking the Chief whether or not *Garcia* covered the fire fighters and indicated that "[t]his inquiry, if proved on remand could constitute a reasonable assertion of coverage." *York*, 944 F.2d at 241. The Court also held that any assertion of FLSA coverage by Broyles will cover the entire department. *Id.* The Court will now examine the evidence presented to determine if Plaintiffs have met their proof burden.

Broyles testified that it was his practice, as President of the Wichita Falls Professional Fire Fighter Association, that whenever he received material from the International, he would consult Chief Jameson about its content to determine whether the information applied to the Wichita Falls Fire Department.

Broyles testified that he first received *Garcia* literature on March 10, 1985, as indicated by the date Broyles wrote on the upper right corner of Plaintiffs' Exhibit 1. This exhibit is a Memorandum from the International to the Presidents of all IAFF U.S. Affiliates explaining *Garcia* and its application to fire fighters. After receiving this material, Broyles went to Chief Jameson, gave the Chief the *Garcia* materials and asked whether the City owed the fire fighters overtime.

Thus, Plaintiffs contend that by showing the International's *Garcia* memo to the Chief and asking him whether the City owed the fire fighters overtime, Broyles asserted coverage on behalf of all the plaintiffs in early March of 1985, at least two months before the City recalculated their pay on May 24, 1985.

The Court agrees, and hereby finds, in accord with *York v. Wichita Falls*, 944 F.2d at 241, that the Plaintiffs asserted FLSA coverage when Broyles asked the Fire Chief whether Wichita Falls owed its fire fighters overtime under *Garcia*.[2]

The City counters by arguing that Chief Jameson was the wrong party to whom to assert coverage. The City argues that because final authority in all personnel decisions rested with City Manager Jim Berzina, Broyles should have asserted coverage to him and any assertion to Jameson was ineffective.

The Court rejects this argument. The Fire Chief is the Department Head for the Fire Department under the Wichita Falls City Charter. City Manager Berzina testified that because the fire department regularly worked overtime, Chief Jameson was working closely with Director of Personnel Jan Stricklin to determine how the City should comply. Stricklin testified that, as Chief, Jameson had authority to make recommendations in staffing, personnel and budget. Berzina also testified that as depart-

ment head, Jameson reported directly to him.

It is evident from the testimony and evidence received at trial that Chief Jameson was intimately involved in crafting the City's response to *Garcia*. He attended the May 3, 1985 FLSA compliance seminar as part of Wichita Falls' delegation. As department head, he drafted the Fire Department's proposed budget for submission to the City Manager's Office. Most importantly, in terms of this litigation, it was Chief Jameson who drafted and signed the "Fair Labor Standards Act Changes" memorandum of May 24, 1985 that was posted in the City's fire houses to announce the City's plan to comply with *Garcia*.

In fact, this memorandum created the most telling piece of testimony supporting the Plaintiffs' position that Chief Jameson was a proper City authority for the fire fighters to approach. Personnel Director Stricklin testified that she approached the Chief after he distributed the May 24 memo and told him that she "wished he had let [her] see [the memo] before he sent it out like most of the directors do before they send out something that affects payroll." To which Chief Jameson replied, "Jan, I don't have to ask you everything I do. I made the decision. It's done. I don't have to have your permission." This comment most likely concerns Jameson's decision to disclose and implement the City's decision. Regardless of exactly what decision Jameson says he made, it is evident Jameson operated his department with wide discretion.

Accordingly, the Court finds that Broyles properly asserted FLSA coverage on behalf of the Plaintiffs in early March.

### 3). Did the City Retaliate?

The Court turns now to the question of whether the City's pay recalculation amounted to illegal "discrimination" under section 8

---

2. The Court notes that the Wichita Falls Professional Fire Fighters Association also sent a formal, written demand of FLSA overtime to both City Manager Jim Berzina and City Attorney H.P. Hodge on November 25, 1986.

This later, more formal demand does not negate the Plaintiffs' March 1985 oral assertion of coverage. *See York*, 944 F.2d at 241 holding Broyles' oral inquiry to Chief Jameson whether City owes FLSA overtime sufficient to assert coverage.

of the FLSA. 29 U.S.C. § 215 note, Pub.L. No. 99–150, § 8, 99 Stat. 791 (Nov. 14, 1985).

The Court of Appeals, in reversing the prior grant of summary judgment in this case, held that "[a]n employee claiming a violation of § 8 must show that an employer's discriminatory action against the employee was an improper response to the employee's assertion of coverage ... [which] plainly requires a showing of retaliation for the assertion of the right."[3] *York,* 944 F.2d at 239.

The court's decision expressly rejected the district court's analysis which established a § 8 violation "when a plaintiff shows that a state or local government employer unilaterally alters a pay plan in response to an application of the FLSA." *York,* 944 F.2d at 239, *citing York v. Wichita Falls,* 727 F.Supp. 1076, 1080 (N.D.Tex.1989).

Therefore, the Plaintiffs must demonstrate by a preponderance of the evidence that Wichita Falls' intended to discriminate, i.e., retaliate, against the fire fighters by violating of 29 U.S.C. § 215 because Battalion Chief Broyles asserted FLSA coverage on behalf of the fire fighters.

Plaintiffs correctly point out that in cases where discriminatory intent is an issue, direct proof of intent is often difficult, if not impossible to obtain—discriminating defendants rarely leave a smoking gun. Therefore, the Court will look to circumstantial evidence for proof of Wichita Falls' intent. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) and *Abilene Sheet Metal, Inc. v. NLRB,* 619 F.2d 332, 339–39 (5th Cir.1980).

As evidence of the City's discriminatory intent, the Plaintiffs list four circumstances which they claim clearly demonstrate that Wichita Falls intended to retaliate against them:

(1) The timing of the hourly wage reduction;

(2) The City officials' comments to Clie Hughes and Bud Davis;

(3) The pretextual nature of the City's stated reasons at trial for cutting the fire fighters' pay;

(4) The complete absence of any effort on behalf of the City to find a legitimate way to comply with the FLSA that would not reduce the fire fighter's wages and benefits.

Plaintiffs' Post–Trial Brief, 20–1.

**(a) Timing, Pretext and Budgetary Accommodation**

The Court will examine together the first, third and fourth circumstances that Plaintiffs allege demonstrate the City's discriminatory intent for analytical ease.

Plaintiffs urge the Court to pay particular attention to the timing of the City's decision to recalculate the fire fighters' pay because timing is an extremely important piece of evidence from which to infer discrimination. *See Martin v. Anslinger, Inc.,* 794 F.Supp. 640, 646 (S.D.Tex.1992). Therefore, the Court makes the following findings regarding the chronology of events pertinent to this case.

On February 19, 1985, the Supreme Court handed down its decision in *Garcia v. San Antonio Metro Transit Authority* requiring state and local governmental bodies to comply with the provision of the Fair Labor Standards Act.

After receiving information on the *Garcia* decision from the International Union on March 10, 1985, Broyles approached Chief

---

**3.** The statutory history of the § 8 amendment illuminates the Court's holding.

The antidiscrimination provision is meant to apply where one or more employees are singled out for adverse treatment in retaliation for an assertion of that they are covered by the overtime provisions of the FLSA. The provision also is intended to apply where an employer's response to an assertion of FLSA coverage is to reduce wages or other monetary benefits for an entire unit of employees. In either instance, the actual victims of discrimi-

nation must show that coverage was asserted and they also must show actual discrimination, i.e., **that the employer's action constituted retaliation for the employee or employees' assertion of coverage and avoidance of the asserted protections of Federal law.** If a court so finds, that conduct would be unlawful under section 8.

Joint Explanatory Statement of the Committee of Conference, H.R.Conf.Rep. No. 357, 99th Cong., 1st Sess. 7, 8 (1985), *reprinted in* 1985 U.S.C.C.A.N. 651, 670 (emphasis added).

Jameson, showed him the information and asked whether the City owed the fire fighters overtime. The Court has already held this to constitute asserting FLSA coverage for the Plaintiffs. Broyles testified, *supra*, that he asserted coverage to the Chief "early" in March. The Court holds that Broyles' assertion occurred at some time after March 10, but within the month of March.

On May 3, 1985, Chief Jameson, Personnel Director Stricklin and other Wichita Falls city officials attended a seminar instructing municipal employers how to comply with *Garcia*. The seminar was jointly sponsored by the Texas City Management Association, Texas City Attorneys Association and the Texas Municipal Personnel Association and featured two speakers from the Department of Labor and two private sector consultants. At this seminar the City learned that regular rates of pay could be recalculated to bring pay overtime without raising the budgeted salaries.

On May 6, 1985, Wichita Falls held its annual budget planning kick-off meeting where all department heads were informed of the projected funds available for their department. The City's evidence pertaining to this meeting indicates that City officials anticipated a tight fiscal year ahead with little, or no, budgetary increases. The City's fiscal evidence is corroborated by the general economic downturn that occurred in this region in the mid-eighties, brought on by the oil industry crash. Wichita Falls' troubles were worsened by the end of a mini-boom in the construction industry as the City repaired damage from a tornado in 1979 that destroyed 20% of the housing stock and a flood in 1981. The City also faced the abolition of federal revenue sharing programs which resulted in a loss of $1.3 million in revenue.

On or about May 10, 1985 the decision was made to recalculate the fire fighters' pay to comply with the FLSA.

On May 24, 1985 Chief Jameson met with fire fighters and informed them that the City had decided to comply with *Garcia* by recalculating their wages so that when their regularly scheduled overtime was paid, their annual take home pay would remain constant instead of laying off members of the recruit class currently in training. The Chief prepared a departmental memorandum explaining the recalculation and listing all employees' new and old hourly pay rate. This memo was posted in all City fire houses.

In October of 1985, Wichita Falls gave all municipal employees a 4% pay raise. The Plaintiffs' raise was based on their recalculated pay scale.

On remand, the Fifth Circuit plainly required the Plaintiffs to prove that the City retaliated, i.e., took an eye for an eye, because Broyles asserted FLSA coverage. *York*, 944 F.2d at 239. There has been no evidence submitted that would support the conclusion or inference that the timing of the City's decision to recalculate wages was an act of retaliation. Rather the evidence in the record leads the Court to the conclusion that the City's decision to recalculate the Plaintiffs' pay, instead of making additional appropriations, was driven by the City's budgetary problems discussed above.

The timing of the recalculation was impelled by the City's fiscal planning cycle, not any animus or desire to discriminate against the fire fighters. While Broyles did assert coverage in mid-March and the City recalculated in early May, the two events are tied together only by the coincident timing of the City's budget planning kick-off. The scheduled submission of the proposed city budget forced a decision on FLSA compliance. There is no discriminatory intent to be inferred.

Plaintiffs also allege that discriminatory intent is implicit in the City's failure to explore alternative budgeting measures that would have allowed the City to pay the fire fighters' overtime on top of their existing salaries. Personnel Director Stricklin however clearly testified that the City considered many avenues before deciding to recalculate the fire fighters' regular pay. According to her testimony, the City considered furloughing the rookie class in training, closing and consolidating fire stations, altering the 24–on/48–off schedule, excluding the fire fighters' sleep and meal time from compensation and delaying the purchase of needed equipment. Wrestling with these unattractive al-

ternatives and facing a predicted budgetary shortfall, the City thought it had found a budget neutral means of complying with *Garcia* after attending the May 3 FLSA seminar.

The City's evidence on this point is credible and the Court finds that the City, in fact, did explore other compliance options.

Finally, the Court turns to the 4% pay raise given to all Wichita Falls municipal employees. Facially, this raise indicates that the City might well have been able to afford paying the overtime. However, City Manager Berzina testified that the City viewed the 4% raise as an inescapable financial sacrifice. City wages were not keeping pace with inflation, and were lower than comparable cities across the state. Further, City wages also lagged behind industrial, private sector wages in Wichita Falls. According to Berzina, the City thought it imperative to give all its employees some sort of raise, even if it meant further belt tightening in other areas of the budget. Stricklin testified that the original budget request had been for 5%, but the City Council reduced it to 4%. In light of the City's uncontroverted explanation for the 4% raise, this evidence weighs against inference of discriminatory intent.

Accordingly, after weighing the Plaintiffs' arguments and evidence against the Defendant's, the Court concludes that the timing of the decision to recalculate the Plaintiffs' pay rates does not support an inference of act with discriminatory or retaliatory intent.

### (b) City Official's Comments

The Court now turns to what City officials are alleged to have said regarding the recalculation. The Court will then re-examine the evidence discussed above in light of these statements, mindful that the whole is sometimes greater than the sum of its parts.

There are two individuals whose statements hold the key to determining whether the City intended to discriminate: Chief Jameson and City Manager Berzina. Both men's statements were related to the Court

by third parties and the Defendant raised timely hearsay objections but ruling was reserved until now. The Court will address each in turn.

### (1) Berzina's Statements

Rumors circulated among the fire fighters about the City's compliance plans before they were announced on May 24 and the fire fighters were unhappy about the recalculation. Apparently, Chief Jameson approached City Manager Berzina about the department's concern. Clie Hughes, former administrative secretary to Chief Jameson, testified that Chief Jameson told her that Berzina told him in response to the fire fighters' unhappiness that "the firemen would simply have to sue over it and they [the City] could keep it in court long enough it wouldn't make it worth their while."

The City objected to this statement as inadmissible hearsay. The Court now finds that while these statements were made out of court and were offered for the truth of the matter asserted, Berzina was available to testify and refuted these statements. Further, the City discredited the veracity of these statements on cross-examination by showing both that Hughes had a motive for retaliation against the City[4] and that Hughes' recollection of the events changed as the trial date approached, becoming increasingly damaging to the City as the trial date approached.

Even if taken as true, the statement does not show that the City intended to unlawfully discriminate against the fire fighters because they had demanded overtime compensation. At best, the statement indicates that the City had reached a decision on FLSA compliance that was not negotiable. Telling the Chief that the City was not retreat from its decision is not indicative of discriminatory intent.

The same is true of statements Berzina made to plaintiff Luther "Bud" Davis when Davis was rejected as a candidate for Fire Chief. During the 1987 search for a replacement for Chief Jameson, Davis was inter-

---

4. Her husband had been forced out of his position as a City health inspector in light of possible conflicts of interest arising from his moonlighting in the pest control business. Further testimony indicated that one of the Plaintiffs was Hughes' husband's partner in the pest control business.

viewed. The Plaintiffs allege that Davis was told he would not be hired as Chief because of his involvement in this suit. They then argue that Davis' rejection demonstrates discriminatory intent.

Berzina testified that Davis was rejected as a Fire Chief candidate because he told the interview panel he would most likely side with the fire fighters in disputes with the City. Berzina told Davis that the City was looking for a Chief who would be more pro-management in labor disputes, but Davis refused to say he could change his loyalties if hired.

Again, this statement does not demonstrate discriminatory intent. In fact, these comments in 1987 indicate very little about the City's intentions in May 1985 when the City recalculated fire fighter pay to comply with FLSA.[5]

Accordingly, the Court finds no indication of discriminatory intent in the statements made by, or attributed to, City Manager Jim Berzina.

### (2) Chief Jameson's Statements

Chief Jameson's conversations with two people, Clie Hughes and plaintiff Robert York, were adduced as proof of the City's discriminatory intent. The Court gave the City a running hearsay objection to the admissibility of any statement made by Chief Jameson.

■ The problem inherent in any statement allegedly made by Jameson is that he is unavailable to deny or rebut anything attributed to him, the classic hearsay definition. Federal Rule of Evidence 801(d)(2)(D), however, deems a statement "by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" to be a party admission and not hearsay. Jim Jameson as Chief of the Wichita Falls Fire Department is a servant of the City and given his role in developing the City's FLSA compliance plan, any statement he might have made regarding the formula-

tion and implementation of the City's FLSA compliance plan is a party admission. *See Wilkerson v. Columbus Separate School Dist.*, 985 F.2d 815, 818 n. 11 (5th Cir.1993) and *Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1311–12 (5th Cir.1991).

Hughes testified that Chief Jameson told her the City had not seriously considered furloughing the recruit class, he had merely told the men that as a ploy—sugar to make the bitter recalculation pill go down.

York testified that he encountered the Chief after one of the station house meetings the Chief held to explain his May 24 FLSA compliance memo. York asked the Chief whether Wichita Falls' actions were correct under *Garcia*, did the City really think the Supreme Court intended the City to recalculate the fire fighters' wages? The Chief told him the fire fighters were not being cheated because they were receiving the same pay they had before *Garcia*. When York said the City's actions were unfair, the Chief replied the decision was made, and "that was the way it was going to be."

Taken together, these comments, again, do not demonstrate discriminatory intent. At most, they illustrate the City's determination to implement and maintain its response to *Garcia*. Adopting a hard line and refusing to negotiate or change a policy does not mean that the City discriminated against the fire fighters. The City thought it had found a budget neutral solution to FLSA compliance and refused to back down from its position. Because the fire fighters are the only City employees regularly scheduled to work overtime, thus the only employees affected by *Garcia*, the City's reaction does not show retaliation against the fire fighters.

■ Examining the evidence as a whole, the Court hereby finds that the circumstances illustrated by the Plaintiffs do not demonstrate by a preponderance of the evidence that Wichita Falls intended to discriminate or retaliate against its fire fighters when it recalculated their wages to comply with the Fair Labor Standards Act.

---

**5.** In fact, these comments point more to a separate hiring discrimination cause of action that Bud Davis may have against the City rather than

any indication of any discriminatory intent on the part of the City in implementing its *Garcia* response.

The question of whether the Fire Captains and Battalion Chiefs are FLSA exempt employees is mooted by the Court's finding that the City did not discriminate against the fire fighters.

## B. PLAINTIFFS' FLSA SECTION 7 CLAIMS

█ The Plaintiffs also allege that if they are salaried employees, as the City contends, the City has not properly paid them overtime in violation of Section 7 of the FLSA. 29 U.S.C. § 207.

The Court agrees with the Plaintiffs' position that the City considers them to be salaried employees. Personnel Director Stricklin affirmed this in her testimony. Stricklin testified that the hourly rates of pay that appear on the Plaintiffs' pay stubs are artifices for ease of computing the fire fighters' benefits, i.e., overtime, vacation, retirement, etc. The Court hereby finds the fire fighters to be salaried employees.

Though salaried, the fire fighters are entitled to overtime compensation at a rate of one and one-half times their regular rate of pay when they exceed the statutory maximum hours per week. 29 U.S.C. § 207(a). Receiving overtime pay does not remove an employee from salaried status. *See* 29 C.F.R. § 778.113 and Dept. of Labor Letter Ruling, November 19, 1986.

Under current federal law, fire fighters are entitled to overtime when they exceed more than 53 hours in a 7 day work week, or 106 hours in a 14 day work week. *Id.* at 29 C.F.R. § 553.230 (1994). Wichita Falls' 24–on/48–off schedule resulted in the fire fighters working 112 hours in the 14 day pay period, resulting in 6 hours of overtime. For ease of computation, the parties at trial discussed the recalculation in terms of 7 day period with the Plaintiffs working 56 hours per week resulting in 3 hours overtime.

Ms. Stricklin demonstrated how the City had recalculated and lowered the fire fighter's nominal regular rate of pay so that overtime could be paid without increasing personnel costs to the City:

1) The fire fighters' average number of scheduled work hours per week is multiplied by the number of weeks in the year. $56 \times 52 = 2912$. This is the total number of hours that the fire fighters actually work.

2) Next, the number of non-overtime hours is multiplied by the numbers of weeks in the year. $53 \times 52 = 2756$.

3) The number of regularly scheduled overtime hours worked in a week is multiplied by the number of weeks in the year by 1.5. This equals $52 \times 3$ 2a $1.5 = 234$. The City labelled this the number of "half time" hours of pay at the regular rate due the fire fighters.

4) The number computed in step 3 is added to the number of non-overtime hours. $234 + 2756 = 2990$.

5) The number obtained in step 4 is then divided into the fire fighter's annual salaries [6] to obtain the artificial rate. $\$26,144.04/2990 = \$8.74$ per hour. The regular rate of $\$8.74$ is then used by the City to compute the fire fighters' scheduled and unscheduled overtime.

Plaintiff argues that the City should have determined the fire fighter's regular rate of pay by dividing their annual salary, $\$26,144.04$, by their regularly scheduled hours, 2912, creating an hourly rate of $\$8.978$ pursuant to Department of Labor regulations. *See* 29 C.F.R. §§ 553.233 and 778.113(b). **Then** they should received time and a half for each hour over 53 under 29 C.F.R. §§ 553.230 and 553.232.

Plaintiffs arguments are valid under 29 U.S.C. § 207 and 29 C.F.R. § 778.107–09 as codified **today.** Unfortunately, 29 U.S.C. § 207 and 29 C.F.R. § 778.107–09 did not apply to Wichita Falls in May 1985. After the Supreme Court extended FLSA coverage to state and municipal employers, Congress amended the Fair Labor Standards Act to retroactively give these newly affected public employers a grace period to adjust their pay schemes to comply with the statute.

Congress' amendments, enacted on November 13, 1985, excluded city's from the FLSA's regulations until April 15, 1986—in

---

6. The figure used is a lieutenant's pay in 1986.

effect delaying the effect of the Supreme Court's decision in *Garcia.* 29 U.S.C. § 203 note, and *see, Knight v. Columbus, Ga.,* 19 F.3d 579, 583–84 (11th Cir.1994); *Anderson v. City of Bristol, Tenn.,* 6 F.3d 1168, 1170 (6th Cir.1993) and *Wethington v. City of Montgomery,* 935 F.2d 222, 226. The amendment's legislative history clearly shows Congress intended to give city and state governments time to get their financial houses in order before requiring that they comply with the Fair Labor Standards Act. *See,* Joint Explanatory Statement of the Committee of Conference, H.R.Conf.Rep. No. 357, 99th Cong., 1st Sess. 7, 8–9 (1985), *reprinted in* 1985 U.S.C.C.A.N. 651, 670 ("State and local government employers are in no way obligated to comply with the Act's overtime provisions prior to April 15, 1986." and "The compensatory time and deferred effective date provision of these amendments are to relieve the economic impact of having to comply with the FLSA's premium rate requirements for overtime.")

In sum, the Plaintiffs complain that the City improperly computed their regular rate of pay in violation of the FLSA. The Court agrees that if the FLSA had covered the Plaintiffs in May of 1985 when the City calculated their artificial regular rate, the City's creative calculations would have violated 29 C.F.R. § 778.113(b) and the City would be liable. Section 778.500(a) of the C.F.R. specifically prohibits the use of artificial regular rates of pay for overtime calculations. Unfortunately, Congress' grace period allowed Wichita Falls, as well as the cities of Columbus,[7] Montgomery[8] and Bristol,[9] to reduce the nominal hourly or regular rate they paid their fire fighters so that when overtime was added, the fire fighters earned the same annual salary they had before *Garcia.*

Therefore, Wichita Falls' recalculation did not violate the Fair Labor Standards Act because Section 7 did not apply to Wichita Falls at the time of the complained of actions.

Alternatively, they complain that they have not been paid the overtime due them because the City includes their regularly scheduled overtime in their annual salary figure.

Testimony from Personnel Director Stricklin, and from the Plaintiffs themselves, showed that the fire fighters do receive overtime compensation, both for their regularly scheduled overtime and for any additional overtime worked because of fire emergencies or natural disasters. *Anderson,* 6 F.3d at 1173.

Accordingly, the Court finds that the fire fighters have received overtime since May 24, 1985, both for their scheduled and unscheduled overtime hours. Therefore, the City of Wichita Falls has not violated the provisions of Section 7 of the FLSA. 29 U.S.C. § 207.

### III. *CONCLUSION*

Pursuant to the above findings of fact and conclusions of law, it is hereby ADJUDGED and DECREED that the Defendant City of Wichita Falls did not violate the Fair Labor Standards Act as alleged by the Plaintiffs in their Complaint.

A Judgement consistent with the Court's opinion will be entered this same day.

IT IS SO ORDERED.

### *JUDGMENT ON DECISION BY THE COURT*

These actions came on for consideration by the Court, Honorable David O. Belew, Jr., District Judge, presiding, and the issues having been duly heard and considered a decision having been rendered by Order entered this same day,

It is hereby ORDERED and ADJUDGED Plaintiffs take nothing, that the actions be dismissed on their merits, and that each party shall pay their own costs of court.

IT IS SO ORDERED.

---

7. *Knight v. Columbus, Ga.,* 19 F.3d 579 (11th Cir.1994).

8. *Wethington v. City of Montgomery,* 935 F.2d 222 (11th Cir.1991).

9. *Anderson v. City of Bristol, Tenn.* 6 F.3d 1168 (6th Cir.1993).