United States Court of Appeals,

Fifth Circuit.

No. 94-10669

Summary Calendar.

Robert R. YORK, et al., Plaintiffs-Appellants,

v.

CITY OF WICHITA FALLS, TX., Defendant-Appellee.

Michael J. HERBERT, et al., Plaintiffs-Appellants,

v.

CITY OF WICHITA FALLS, TX., Defendant-Appellee.

April 5, 1995.

Appeal from the United States District Court for the Northern District of Texas.

Before WIENER, EMILIO M. GARZA and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

The plaintiff fire fighters brought the present action, claiming that the City of Wichita Falls, Texas had deprived them of overtime compensation and discriminated against them in violation of the Fair Labor Standards Act (FLSA).[1]  Following a bench trial, the district court entered judgment for the City.  The plaintiffs brought this appeal.  We affirm.

I. BACKGROUND

In February of 1985, the Supreme Court decided *Garcia v. San Antonio Metro Transit Authority,*[2] requiring state and municipal employers to comply with the wage and hour provisions of the Fair Labor Standards Act.  In early March of 1986, plaintiff Battalion Chief Gary Broyles, in his capacity as President of the Wichita Falls Professional Fire Fighters Association, an affiliate of the International Association of Fire Fighters, began to receive information from the International about

---

[1]29 U.S.C. § 201 *et seq.*

[2]*Garcia v. San Antonio Metro Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985).

the Supreme Court's *Garcia* decision. Believing that the fire fighters were entitled to overtime compensation, Broyles approached Wichita Falls' Fire Chief Jim Jameson regarding the applicability of *Garcia* to Wichita Falls' firemen. Broyles, and other witnesses for the plaintiffs, indicated that Chief Jameson read the materials and ultimately told Broyles that it looked like the fire fighters were entitled to overtime under *Garcia.*

On May 24, 1985, the City recalculated the firemen's pay, reducing their nominal hourly rate so that when overtime was included, the fire fighters' total annual pay remained the same and the City's budget was not affected. This type of recalculation apparently was recommended at a May 3, 1985 seminar on how to comply with *Garcia.*[3]

On November 14, 1985, Congress temporarily alleviated *Garcia's* fiscal effect on state and municipal governments by amending the FLSA so that state and municipal employers would not be required to pay overtime until April 15, 1986.[4] This grace period was accompanied by amendments making it illegal for any employer to discriminate against an employee who, on or after February 19, 1985, asserted coverage under the FLSA.[5]

The Plaintiffs decided to challenge the City's recalculation under the FLSA. Filing suit in federal district court,[6] they alleged that the City violated the anti-discrimination provisions of the 1985 Amendments to the FLSA by recalculating, and lowering, their regular hourly rate of pay after they demanded overtime compensation. The Plaintiffs also alleged that the City violated the FLSA by

---

[3]The district court found that this seminar was sponsored jointly by the Texas City Management Association, the Texas City Attorney's Association, and the Texas Municipal Personnel Association, and featured two speakers from the Department of Labor and two private sector consultants.

[4]Fair Labor Standards Amendments of 1985, Pub.L. No. 99-150, § 6, 99 Stat. 791; 29 U.S.C.A. § 203 (Supp.1994) (Historical and Statutory Notes).

[5]Fair Labor Standards Amendments of 1985, Pub.L. No. 99-150, § 8, 99 Stat. 791; 29 U.S.C.A. § 215 (Supp.1994) (Historical and Statutory Notes).

[6]The first complaint was filed April 16, 1987 by Robert York and other fire fighters. In 1990, another suit was filed on behalf of fourteen additional fire fighters who were hired after the recalculated pay system was already in effect. The latter case made essentially the same allegations against the same party defendant. The two cases were consolidated in the district court.

failing to pay the required overtime premium.

The district court granted summary judgment in favor of the plaintiffs.[7] On appeal, this Court vacated the summary judgment and remanded the case for trial.[8] A bench trial was held in the district court February 22-24, 1994. By a Memorandum Opinion and Judgment on June 17, 1994, the district court dismissed the plaintiffs' claims.[9] This appeal followed.

## II. DISCUSSION

### A. PLAINTIFFS' DISCRIMINATION CLAIMS

On the first appeal in this case, we held that "[t]o prove that pre-enactment actions violated § 8 [of the 1985 Amendments], a plaintiff must show that (1) he or she is an employee covered by the act, (2) he or she asserted coverage under the FLSA on or after February 19, 1985, and (3) the state or local governmental employer's action was intended to discriminate because of assertion of coverage."[10] The district court determined that the plaintiffs were employees covered by the act, and that they sufficiently asserted coverage after February 19, 1985. However, the district court held that the plaintiffs failed to meet their burden of proof on the last element. The court found that the evidence did not support an inference of discriminatory or retaliatory intent. On appeal, the plaintiffs argue that this finding is clearly erroneous.

Plaintiffs presented evidence of four circumstances which they claim clearly demonstrate that Wichita Falls intended to retaliate against them: (1) the timing of the hourly wage reduction; (2) comments made by City officials; (3) the pretextual nature of the City's stated reasons at trial for cutting the fire fighters' pay; and (4) the complete absence of any effort on behalf of the City to find a legitimate way to comply with the FLSA that would not reduce the fire fighter's wages and benefits.

With regard to timing, pretext and budgetary accommodation, the district court found that the city's actions were completely consistent with a desire to comply with *Garcia* and the FLSA

[7]*York v. City of Wichita Falls, Tex.,* 727 F.Supp. 1076 (N.D.Tex.1989).

[8]*York v. City of Wichita Falls, Tex.,* 944 F.2d 236 (5th Cir.1991).

[9]*York v. City of Wichita Falls, Tex.,* 856 F.Supp. 1191 (N.D.Tex.1994).

[10]*York,* 944 F.2d at 241.

within existing budgetary constraints. With regard to comments made by certain city officials, the district court found that the alleged statements showed, at most, the City's determination to implement and maintain its response to *Garcia.* Although certain statements might have indicated a hard line approach and an unwillingness to negotiate, they did not establish a discriminatory intent.

On appeal, the plaintiffs can point to no evidence that was not adequately considered by the district court. The findings of the district court have ample support in the record, and thus we cannot conclude that they are clearly erroneous.[11]

B. PLAINTIFFS' OVERTIME CLAIMS

The FLSA requires any employee working over 40 hours in a week to be paid overtime, premium compensation at the rate of one and one-half times their "regular rate" of pay.[12] An employee's regular rate of pay is "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed."[13] For salaried employees, the regular rate is determined by converting their annual pay rate to its non-overtime hourly equivalent by simply dividing one by the other.[14]

While § 207(a) mandates time and a half for hours worked over 40 per week, § 207(k) sets higher hourly standards for public safety employees like fire fighters.[15] In the 21 day period Wichita Falls uses, fire fighters are required to be paid overtime only when they work more than 159 hours.[16] Working 24 hours on and 48 hours off, the fire fighters were scheduled for 168 hours in each 21 day work period. Thus, they would be entitled to overtime compensation for 9 hours of work during a normal 21 day work period. The fire fighters were considered salaried employees and were paid

---

[11]The reported opinion of the district court contains a thorough and detailed evaluation of the evidence, 856 F.Supp. at 1194-1201, which we find unnecessary to repeat here.

[12]29 U.S.C. § 207(a)(1).

[13]*Walling v. Youngerman-Reynolds Hardwood Co.,* 325 U.S. 419, 425, 65 S.Ct. 1242, 1245, 89 L.Ed. 1705 (1945).

[14]29 C.F.R. § 778.113.

[15]29 U.S.C. §§ 207(a), (k).

[16]29 C.F.R. § 553.230.

bi-weekly.  On average, the fire fighters worked 6 hours of scheduled overtime in each two-week pay period, or 3 overtime hours per week.

At trial, Ms. Stricklin, the City's Director of Personnel, demonstrated how the City recalculated and lowered the fire fighter's nominal hourly rate of pay so that overtime could be paid without increasing personnel costs to the City.  To summarize, the number of non-overtime hours each fire fighter works in a year was added to one and one-half times the number of regularly scheduled overtime hours each fire fighter works in a year.  This number was then divided into each fire fighters' annual salary to derive his new regular hourly rate.  This hourly rate was then used to calculate the premium rate for scheduled and unscheduled overtime.  The recalculation was designed to keep the fire fighters at exactly the same level of annual compensation for regularly scheduled hours.[17]

Plaintiff argues that the City should have determined the fire fighter's regular rate of pay by dividing their annual salary by their regularly scheduled hours, including overtime hours, pursuant to Department of Labor regulations.[18]  Plaintiffs are correct that the Department of Labor regulations provide a method for calculating an employee's regular rate from the employee's salary.  Plaintiffs also

---

[17]Using a lieutenant's pay for fiscal year 1986, the calculations went as follows:

> 1) The fire fighters' average number of scheduled work hours per week was multiplied by the number of weeks in the year.  $56 \times 52 = 2912$.  This is the total number of hours that the fire fighters actually worked per year.
>
> 2) Next, the number of non-overtime hours was multiplied by the numbers of weeks in the year.  $53 \times 52 = 2756$.
>
> 3) The number of regularly scheduled overtime hours worked in a week was multiplied by the number of weeks in the year and then by 1.5.  $52 \times 3 \times 1.5 = 234$.  The City labelled this the number of "half time" hours of pay at the regular rate due the fire fighters.
>
> 4) The number computed in step 3 was added to the number of non-overtime hours.  $234 + 2756 = 2990$.
>
> 5) The number obtained in step 4 was then divided into the fire fighter's annual salaries to obtain the artificial rate.  $\$26,144.04/2990 = \$8.74$ per hour.  The regular rate of $8.74 was then used by the City to compute the fire fighters' scheduled and unscheduled overtime.

[18]See 29 C.F.R. §§ 553.233, 778.113.

demonstrate that the method used by the City was contrary to the relevant regulations. However, it is clear that the FLSA and accompanying regulations did not apply to Wichita Falls in May of 1985 when the City calculated the plaintiffs' "regular rates" and began using its adjusted pay system.

After the Supreme Court extended FLSA coverage to state and municipal employers, Congress amended the Fair Labor Standards Act to retroactively give these newly affected public employers a grace period to adjust their pay schemes to comply with the statute. Congress' amendments, enacted on November 13, 1985, excluded cities from the FLSA and its regulations retroactively from February 19, 1985, the date *Garcia* was announced, until April 15, 1986.[19] Therefore, the calculation of the plaintiffs' "regular rate" that the City performed in May of 1985 could not have violated the FLSA because the FLSA simply did not apply.

The plaintiffs attempt to avoid this problem by arguing that the recalculation somehow constituted a continuing violation of the FLSA. The record indicates that following the City's adjustment in May of 1985, the City kept appropriate records of the hours actually worked by each fire fighter, and paid the required overtime premium for regularly scheduled and unscheduled overtime hours based on the calculated regular rate. The plaintiffs do not contest these facts. Rather, the plaintiffs contend that the City's use of the calculated rate constituted a violation of the FLSA each time the fire fighters were paid, and thus there were repeated violations of the Act after April 15, 1986.

The "continuing violation" theory, however, is inapplicable in this case. For there to be a continuing violation, there must be at least a violation. The plaintiffs' argument assumes that the City's calculation of the regular hourly rate, which was lawful in May of 1985, somehow became unlawful after April 15, 1986. The plaintiffs cannot attack the application of the City's pay system after April 15, 1986, so their attack is necessarily focused on the original calculation. Clearly, the City's May 1985 adjustment in bookkeeping was allowed by the Congressional amendment of the

---

[19] 29 U.S.C. § 203 note; *see Knight v. Columbus, Ga.,* 19 F.3d 579, 583-84 (11th Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 318, 130 L.Ed.2d 280 (1994); *Anderson v. City of Bristol, Tenn.,* 6 F.3d 1168, 1170 (6th Cir.1993); *Wethington v. City of Montgomery,* 935 F.2d 222, 226 (11th Cir.1991).

FLSA following *Garcia*.  We cannot use a continuing violation theory to make a discrete lawful act unlawful upon a change in the applicable law.  Therefore, the plaintiffs' arguments must fail.

## III. CONCLUSION

For the reasons given above, the judgment of the district court is AFFIRMED.