# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

WASHINGTON-DULLES
TRANSPORTATION, LIMITED,
                    *Plaintiff-Appellant,*

v.

METROPOLITAN WASHINGTON AIRPORTS
AUTHORITY,
                    *Defendant-Appellee,*

DULLES TAXI SYSTEMS,
INCORPORATED,
                    *Intervenor/Defendant-*
                    *Appellee.*

No. 02-1656

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge; Barry R. Poretz,
Magistrate Judge; Welton Curtis Sewell, Magistrate Judge.
(CA-00-999-A)

Argued: October 28, 2003

Decided: January 30, 2004

Before MOTZ, TRAXLER, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Harvey Joseph Volzer, SHAUGHNESSY, VOLZER &
GAGNER, P.C., Washington, D.C., for Appellant. Raymond F. Mon-

roe, CROWELL & MORING, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:** Monica G. Parham, CROWELL & MORING, L.L.P., Washington, D.C.; Janis Orfe, THE LAW OFFICES OF JANIS ORFE, P.C., Fairfax, Virginia; John S. Pachter, Jonathan D. Shaffer, SMITH, PACHTER, MCWHORTER & ALLEN, P.L.C., Vienna, Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

This appeal arises from an action brought by Washington-Dulles Transportation, Ltd. ("WDT"), which held the taxi concession contract for Washington-Dulles Airport, against the Metropolitan Washington Airports Authority ("MWAA"). In its action, WDT challenges MWAA's award of the airport's taxi concession contract to Dulles Taxi Systems, Inc. The district court granted summary judgment to MWAA and Dulles Taxi. We affirm.

### I.

MWAA was created by the District of Columbia and Virginia for the purpose of operating the two federally-owned airports in the metropolitan area of the District of Columbia — Washington-Dulles International Airport and Ronald Reagan Washington National Airport. Transfer of the operating responsibility for the airports to MWAA was authorized by the Metropolitan Washington Airports Act of 1986 (the "Enabling Act" or "Act") via a 50-year lease (the "Lease") between the federal government and MWAA. *See* 49 U.S.C.A. §§ 49101 - 49112 (West Supp. 2003).

The Enabling Act prescribes a number of mandatory provisions that must be included in the Lease. Pertinent to this case, the Act

requires the Lease to provide that "[i]n acquiring by contract supplies or services for an amount estimated to be more than $200,000, or awarding concession contracts, the Airports Authority to the maximum extent practicable shall obtain complete and open competition through the use of published competitive procedures." 49 U.S.C.A. § 49104(a)(4). The Act further requires that MWAA's contracts be "awarded by procedures that follow sound Government contracting principles." *See* 49 U.S.C.A. § 49106(g). The Lease, in turn, contains provisions that comply with these legislative mandates.

To fulfill the requirement for published competitive procedures, MWAA adopted a contracting procedures manual. Pursuant to the manual, when a Request for Proposals is issued, the MWAA will evaluate each proposal and score it against predetermined evaluation criteria. MWAA will then select the proposal which offers the greatest overall benefit in terms of those criteria.

Pursuant to contracts awarded by MWAA, WDT was the exclusive taxicab concessionaire at Dulles International Airport from November 1, 1989 to July 31, 2000. In August 1999, in preparation for the expiration of the most recent contract, MWAA issued a Request for Proposals ("RFP") for the future operation of the Dulles taxicab concession. The contract to be awarded was for a period of three years, plus one two-year extension at MWAA's sole option. The RFP set forth six evaluation criteria, each with an accompanying explanation. The evaluation criteria were also assigned an "associated evaluation point value to provide proponents with a guideline of the relative importance of each element" to MWAA. J.A. 1158. The weighted evaluation criteria were as follows: (1) operating plan (30%); (2) management plan (15%); (3) plan to achieve a minimum 10% participation by the non-flyer taxicab fleet (15%); (4) industry experience and qualifications (15%); (5) financial offer, capital improvements, and financial ability to perform and pro forma statements (15%); and (6) proposed disadvantaged business enterprise participation (10%). However, the RFP also notified bidders, *inter alia*, of the following rights explicitly retained by MWAA:

1.  The Authority will accept the proposal which, in the Authority's sole judgment, best meets the Authority's requirements as set forth herein. The Authority reserves

the right to reject any or all proposals, to waive irregu-
larities and technicalities in the proposals, to re-
advertise, or to proceed to provide the service otherwise
when such actions are judged to be in the best interests
of the Authority.

2.    The Authority reserves the right to modify or amend
any provision of the RFP document, including, without
limitation, the provisions of the Contract.

. . . .

4.    Proposals shall be rejected if the proponent . . . is in
default or arrearage under any existing or previous
agreement with the Authority, or if there exist any
unpaid monetary claims by the Authority against the
proponent. . . .

J.A. 1141.

Several companies, including WDT and Dulles Taxi, submitted
bids for the new taxicab concession contract. The bids were first
reviewed by a Technical Evaluation Committee comprised of MWAA
staff members (the "staff"). The staff was provided a detailed listing
of the six evaluation factors and subfactors taken from the RFP, and
an assigned total point value for each factor and subfactor.[1] Under the

---

[1]For example, the "operating plan" criteria contained a listing of four
subfactors with accompanying citation to the RFP. Subfactor 1.A —
"[t]he completeness, depth, quality, efficiency, reasonableness, and feasi-
bility of the offeror's Taxicab Services/Operating Plan (pages 6 and 7 —
RFP)" — was assigned the following point ranges:

| | | |
|---|---|---|
| 135-150 | Outstanding | Plan meets all and exceeds some or all requirements. . . . |
| 134-120 | Very Good | Plan meets all requirements . . . . |
| 119-105 | Good | Plan meets requirements . . . in most areas. |
| 104-75 | Fair/Poor | Plan meets requirements . . . in some areas. |
| 74 and below | Unsatisfactory | Plan does not meet requirements |

staff's evaluation, WDT scored the highest, with 843 points out of a maximum of 1000 points. Dulles Taxi scored the second highest, with 771 points. In March 2000, the staff submitted a recommendation to MWAA's business administration committee ("the Committee"), which was comprised of members of the MWAA Board, that WDT receive the contract and remain as the taxi concessionaire.

The Committee subsequently met with WDT and Dulles Taxi and asked them to address more specifically their past experience and performance. During the meeting, several of the Committee members suggested that the staff's evaluation under the criteria had failed to account adequately for past experience and performance, and the Committee ultimately voted 3 to 1 to award the contract to Dulles Taxi even though the staff scored WDT higher.

Under MWAA procedures, however, the Committee did not have the final say on the award of the contract. The MWAA Board of Directors (the "Board") had to ratify or reject the Committee's recommendation. Consequently, on April 10, 2000, before the Board acted, WDT filed a pre-award protest of the Committee's selection of Dulles Taxi. WDT's chief assertion was that the Committee, in rejecting the staff's recommendation and choosing Dulles Taxi, had improperly ventured beyond the evaluation criteria.

After allowing both WDT and Dulles Taxi to submit written and oral comments regarding the issues raised in the protest, the Committee issued its April 28, 2000, report to the Board explaining its decision to select WDT and recommending that the Board affirm its choice. The report set forth the Committee's view that the staff's evaluation of the proposals had not adequately accounted for the past performance of the bidders, which was a consideration under several of the factors set forth in the selection criteria included in the RFP — the "operating plan," "management plan," and "industry experience and qualifications" criteria.

---

in most areas.

J.A. 1329.

On May 1, 2000, WDT and Dulles Taxi submitted comments on the Committee's report to the Board and, two days later, were afforded the opportunity to present their arguments relating to the protest. The Board, however, delayed a decision pending the receipt of additional information from the parties pertaining to the protest issues and a reconsideration by the Committee of its decision. The Board also amended the RFP ("Amendment Six"), which clarified that the Committee and Board were not bound by the scores resulting from the staff's technical evaluation of the selection criteria, and requested that the bidders respond to five specific questions relating to past experience and performance issues. Ultimately, the Committee reaffirmed its earlier vote in favor of Dulles Taxi and recommended that the Board deny WDT's protest. In a second report dated June 2, 2000, the Committee again outlined the reasons underlying its decision, pointing out in particular those areas where the Committee disagreed with the staff's assignment of points under the selection criteria. During the June 7, 2000, regular Board meeting, the Board affirmed the Committee's selection by a vote of 8 to 1.

WDT filed this action in federal court seeking a declaration that MWAA's decision violated the Enabling Act and the Lease, as well as an injunction barring MWAA from awarding the taxi concession to Dulles Taxi and directing MWAA to give the concession to WDT. WDT asserted that MWAA had deviated from its published competitive procedures in refusing to award the taxi concession contract to WDT and, therefore, had failed to obtain "complete and open competition," 49 U.S.C.A. § 49104(a)(4), or comply with "sound Government contracting principles," 49 U.S.C.A. § 49106(g), in violation of the Enabling Act and the Lease.

The district court initially dismissed WDT's complaint for want of subject matter jurisdiction, ruling that, although federal courts have jurisdiction to decide whether MWAA has adopted competitive bid procedures that satisfy the requirements of the Enabling Act, federal courts do not have jurisdiction when the application of the published competitive procedures are at issue. On appeal, we held that the Act specifically provided for the enforcement of the Lease in federal court, and that the Act allowed an aggrieved private party to bring an action to enforce the terms of the Lease. Accordingly, we reversed and remanded the matter for further proceedings before the district

court. *See Washington-Dulles Transp., Ltd. v. Metropolitan Washington Airports Auth.*, 263 F.3d 371 (4th Cir. 2001).

On remand, WDT filed an Amended Complaint adding a claim for monetary damages. After completing discovery, WDT and MWAA/Dulles Taxi filed cross-motions for summary judgment on the merits. The district court granted summary judgment to MWAA and Dulles Taxi and denied WDT's motion for summary judgment. Applying a "rational basis" standard of review to MWAA's award of the contract to Dulles Taxi, the district court concluded that "the undisputed facts demonstrate that [MWAA] chose [Dulles Taxi] after a methodical review of the submitted proposals" and that WDT had failed to meet its burden of demonstrating that MWAA had no rational basis for awarding the contract to Dulles Taxi instead of WDT. J.A. 2658.

In the alternative, the district court ruled that WDT "was not in a position to bid on the RFP" in the first instance. J.A. 2659. During discovery, a new factual and legal question had developed. As noted above, the RFP provided that "[p]roposals shall be rejected if the proponent . . . is in default or arrearage under any existing or previous agreement with the Authority." J.A. 1141. The district court found that, at the time the contract was awarded to Dulles Taxi, WDT owed MWAA over $600,000 in payments under the old taxi concession contract and, therefore, WDT was disqualified from competing for the contract under the language of the RFP. The district court also ruled that WDT was not entitled to monetary damages under the Act or the Lease and rejected WDT's attempt to raise claims based on the tort of assumpsit and the Constitution.

On appeal, WDT asserts the district court erred in granting summary judgment to MWAA and Dulles Taxi, and against it, because (1) the undisputed facts reveal that the award was arbitrarily made to a less qualified bidder without explanation, in violation of the Lease and Enabling Act; and (2) the court's conclusion that WDT was not a qualified bidder due to an alleged arrearage under the existing contract was not raised by MWAA in its pleadings and, in any event, was not supported by the record. In addition, WDT appeals the district court's denial of its motion to compel discovery into "executive sessions" held by the MWAA board members during the selection pro-

cess, denial of its claim for monetary damages, and exclusion of its expert witnesses. For the reasons that follow, we affirm.

## II.   Motion to Compel

We first consider WDT's claim that the district court improperly denied its motion to compel written and oral discovery into matters which occurred during various "executive sessions" of the MWAA Board. The sessions at issue were conducted in a closed and private manner during the time the protest was under consideration. They were attended by in-house counsel and, in all but one instance, outside counsel as well. We review the district court's denial of a motion to compel for abuse of discretion. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995).

On November 30, 2001, in response to written discovery requests, MWAA provided a detailed privilege log to WDT, listing all documents that it claimed were protected by the attorney-client privilege and work product doctrine. WDT's counsel made no effort to challenge those designations at the time, or to seek their production via a motion to compel. During subsequent depositions of various MWAA members, at least one of which took place in early January 2002, WDT's counsel asked broad questions about what occurred during the executive sessions held by the MWAA Board. MWAA's attorneys objected to questions that sought to delve into discussions that took place during executive sessions of the Board, also claiming an attorney-client and work product privilege for such conversations.

On March 8, 2002, a week before the close of discovery and less than two weeks before the scheduled pre-trial conference, WDT filed a motion to compel discovery into the executive sessions. Specifically, WDT sought review of the documents for which the privileges had been asserted and an opportunity to redepose the MWAA witnesses on matters that occurred during executive sessions. On March 15, 2002, the magistrate judge conducted a hearing on the motion to compel. With regard to the executive session issue, the judge concluded that although some of what occurs in a closed executive session might be privileged, ordinary facts pertaining to business matters cannot be shielded merely by the presence of an attorney. The judge further set forth for WDT the appropriate course to take during the

deposition of the CEO for MWAA which was scheduled for later that same day:

> Now, in regards to the deposition this afternoon, my guidance is, if there is a privilege asserted, that foundational questions may be asked to flesh out that privilege, and then you make a proffer on the privilege, you make a counter proffer, you certify the question, you come before the Court with the transcript, and then the Court has the benefit of everything, because once the foundational questions are asked, maybe it's a slam-dunker: obviously there is no privilege, because eighteen people were in the room who had no business being there at all. . . . [I]t seems to me that's the way to contour it out for the Court.

J.A. 719. At the conclusion of the hearing, the judge informed the parties that he would review *in camera* challenged documents for which a privilege was asserted and took the matter under advisement pending receipt of the challenged documents.

During the scheduled deposition of the CEO of MWAA, WDT's counsel chose not to follow the court's guidance. Counsel also rejected MWAA's offer to allow the CEO to testify regarding events that occurred during executive sessions, provided counsel agree that the testimony would not be construed as a waiver of the applicable attorney-client privilege and work-product protection.

On March 27, 2002, the magistrate judge, having conducted an *in camera* review of the sixty-five documents sought by WDT which were listed in MWAA's privilege log, denied the motion to compel. The judge concluded that the majority of the documents did not pertain to executive sessions at which the contract award was discussed or mentioned and, of the documents that did fall within those parameters, MWAA had properly asserted the attorney-client privilege. Shortly thereafter, WDT filed a "renewed" motion to compel with the district court. The district court denied the motion as well.

We find no abuse of discretion in the district court's resolution of WDT's motion to compel. After expressing concern over the lapse in time between MWAA's assertion of the privilege and the filing of a

motion to compel, the magistrate judge clearly outlined for WDT the course to pursue during the upcoming deposition of the CEO of MWAA and considered *in camera* the challenged documents. Nonetheless, WDT chose not to follow the court's guidance and rejected MWAA's offer to allow questioning into the very matters into which WDT professed a need to inquire. Accordingly, we affirm the district court's denial of WDT's motion to compel.

III.

We next consider whether the district court improperly granted summary judgment to MWAA and Dulles Taxi and denied summary judgment to WDT on the merits. We review the district court's summary judgment rulings de novo. *See Figgie Int'l v. Destileria Serralles, Inc.*, 190 F.3d 252, 255 (4th Cir. 1999).

Generally, "a disappointed bidder bears the heavy burden of establishing in court that the decision by [a] government agency either had no rational basis or involved a clear and prejudicial violation of applicable statutes or regulations." *Newport News Shipbuilding & Dry Dock Co. v. General Dynamics Corp.*, 960 F.2d 386, 392 (4th Cir. 1992) (internal quotation marks omitted). Thus, WDT was required to "demonstrate prejudice attributable to either (1) the procurement procedure's violation of applicable statutes or regulations, or (2) an arbitrary or irrational decision of the procurement official on matters primarily committed to his discretion." *Id.*

WDT asserts that it established both that MWAA failed to obtain "complete and open competition," 49 U.S.C.A. § 49104(a)(4), and to comply with "sound Government contracting principles," 49 U.S.C.A. § 49106(g), as required by the Enabling Act and the Lease, and that MWAA's decision was arbitrary and irrational under the circumstances. Like the district court, we are unpersuaded.

The heart of WDT's claim is its complaint that the Board awarded Dulles Taxi the concession contract even though the staff evaluation team assigned WDT a higher score under the six published criteria than it assigned to Dulles Taxi. From this fact, WDT argues that the Committee and Board must have deviated from the published competitive procedures in awarding the contract, most likely in the closed

executive sessions. WDT contends that the decision to award the contract to Dulles Taxi was irrational because, under the staff evaluation, Dulles Taxi was a "less qualified" bidder. WDT's theory, however, suffers from a number of infirmities.

First, we may summarily dispense with WDT's wholly speculative assertion that the Board members must have employed undisclosed criteria in the selection process during closed executive sessions to reach their decision. There is simply no evidence in the record to support this assertion. No one disputes that the Board members were entitled to consult privately with legal counsel in executive session and MWAA acknowledged, in keeping with the magistrate judge's view, that not *every* communication taking place in executive session is automatically protected from disclosure. Thus, the magistrate judge advised WDT that it could delve into the question of whether the Board members discussed the actual award of the contract during the executive sessions. WDT, however, declined to do so. Accordingly, we have no information as to what occurred during the executive sessions and, as a result, no evidence that the Board members applied undisclosed or otherwise improper criteria as a basis for awarding the contract to Dulles Taxi during any such executive session. We do, however, have an abundance of information regarding the actions taken and opinions expressed by the Board members in public sessions and public documents — the Committee's original debate and vote to award Dulles Taxi the contract; the Board's decision to defer ruling on WDT's protest until more information could be gathered; the Committee's vote to reaffirm its original selection; two reports issued by the Committee explaining why it selected Dulles Taxi over WDT for the new contract instead of accepting the staff's evaluation and recommendation; and the Board's vote to affirm the Committee's ultimate decision.

Second, WDT's claim is founded upon the erroneous premise that the procurement process violated federal law and was otherwise irrational because, as a factual matter, the staff scored WDT 72 points higher than Dulles Taxi under the published criteria. The RFP issued August 1999 indicated that all proposals would be evaluated in accordance with the six published criteria, but application of the criteria necessarily required the exercise of independent discretion and judgment. The bidders were aware that neither the Board nor the Commit-

tee was bound by the numbers assigned by the staff evaluation team. And, in any event, the RFP plainly provided that MWAA would accept the bid which, "in [MWAA's] sole judgment . . . best meets [MWAA's] requirements" specified in the RFP and that it "reserve[d] the right to reject any or all proposals, to waive irregularities and technicalities in the proposals, to re-advertise, or to proceed to provide the service otherwise when such actions are judged to be in the best interests" of MWAA. J.A. 1141.

The members of the staff evaluation team were charged with scoring the proposals under the criteria, compiling their evaluations into a collective score, and submitting a *recommendation* to the Committee. WDT and Dulles Taxi scored first and second, respectively, but were separated by a narrow gap of only 72 out of 1000 points. Furthermore, the staff had no authority and was in no position to award the contract based upon these numbers. Rather, it was the Board members who retained the final decision-making authority. The Committee, which was free to view the proposals under the criteria as well and which allowed WDT and Dulles Taxi to make oral presentations, was obviously concerned about the staff's evaluation of several of the factors. Accordingly, the Committee chose to delve further into the issues of the bidders' procedure for handling complaints, and past experience and performance. Ultimately, the Committee concluded that the staff's evaluation under the criteria had failed to adequately account for such matters. In response to WDT's pre-award protest and after considering yet additional argument and information from the bidders, the Committee again chose Dulles Taxi, reiterating its view that the staff's evaluation of the proposals had not adequately accounted for the past performance of the bidders, which was a consideration under at least two of the selection criteria included in the RFP. Accordingly, we see nothing improper in this course of events.

Finally, we are unpersuaded by WDT's reliance upon a 75-page report issued by the United States General Accounting Office ("GAO") concerning MWAA's contracting practices. Although the GAO report suggested that MWAA's practices did not always comply with the requirements of the Lease and recommended that MWAA's Board take steps to ensure that MWAA publish procedures for competitively awarding contracts in the future, the report provides no evidence that the selection process employed by MWAA in awarding

this concession contract was not founded upon a full and open bidding process as required by the Enabling Act and Lease. The GAO report focused on contracts other than concession contracts and did not audit the taxi concession contract at issue. Moreover, the Enabling Act and Lease, rather than recommendations of the GAO, govern the action of MWAA.

In conclusion, the evidence presented by the parties reveals that the Committee and Board disagreed with the staff's application of several of the selection criteria and, in particular, believed that the staff failed to place enough emphasis on past performance issues. The bidders were given several opportunities to address the Board members' concerns and the Board ultimately chose the bidder that it believed best met the criteria and the needs of MWAA. Like the district court, we view MWAA's selection of Dulles Taxi over WDT as one grounded in a methodical and public review of the proposals and one which rests upon a rational basis. Because WDT failed to establish that MWAA's procurement process violated the Enabling Act or Lease, or that the MWAA's decision to award the concession contract to Dulles Taxi instead of WDT was arbitrary or irrational, we affirm.[2]

## IV.

For the foregoing reasons, we affirm the judgment of the district court.[3]

*AFFIRMED.*

---

[2]Our conclusion on this point makes it unnecessary to consider MWAA's claim that the district court improperly granted summary judgment based on its conclusion that WDT was disqualified from bidding on the new concession contract because it was in arrears on its prior contract with MWAA.

[3]Because we affirm the district court's grant of summary judgment to MWAA, we express no opinion on WDT's claim that the magistrate judge improperly excluded expert testimony proffered by WDT and that the district court erred in concluding that WDT would not be entitled to monetary relief.