**L.R. WETHINGTON, et al.,**
**Plaintiffs–Appellees,**

v.

**CITY OF MONTGOMERY,**
**Defendant–Appellant.**

**No. 89–7885.**

United States Court of Appeals,
Eleventh Circuit.

July 9, 1991.

---

G. Paris Sykes, Jr., Patricia G. Griffith, Ford & Harrison, Atlanta, Ga., Hugh R. Evans, Jr., City Atty., Montgomery, Ala., for defendant-appellant.

Stephen R. Glassroth, Kendrick & Glassroth, Montgomery, Ala., John D. Schwalb, Brewer, Krause & Brooks, Nashville, Tenn., for plaintiffs-appellees.

Before KRAVITCH and COX, Circuit Judges, and DYER, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

The City of Montgomery (the "City") appeals the district court's determination that it violated sections 7 and 15(a)(2) of the Fair Labor Standards Act (the "FLSA" or "Act") when it recalculated the wage scheme for the City's fire fighters. We hold that the district court erred in finding that the City violated the Act.

## I

### A

The FLSA, codified at 29 U.S.C. § 201 et seq., establishes certain requirements for employers, including a minimum wage to be paid employees, a maximum number of hours to be worked at a regular pay rate, and a requirement of overtime pay. The general maximum hour provisions require that employers pay one and one-half times the "regular rate" of pay for overtime hours. *See* 29 U.S.C. § 207(a)(1). Overtime hours for a week begin after an employee has worked forty hours in that week. *Id.* Although the statute does not define "regular rate," [1] the Supreme Court has stated that "the regular rate refers to the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." *Walling v. Youngerman–Reynolds Hardwood Co.*, 325 U.S. 419, 424, 65 S.Ct. 1242, 1245, 89 L.Ed. 1705 (1945). The Department of Labor has adopted this definition and stated that the regular rate cannot be less than the minimum wage. 29 C.F.R. §§ 778.107, 778.108.

Congress recognized that certain jobs are not easily susceptible to the workweek method of wage and time calculations, and therefore provided special calculation methods for some trades, including fire protection and law enforcement. 29 U.S.C. § 207(k). Because fire protection employees often work several 24 hour shifts over the course of several weeks, subsection (k) permits fire protection employers to calculate overtime during varied work periods. The periods can cover 7 to 28 days, with the regular, non-overtime hours for 28 day periods being 212 hours and the non-overtime hours for periods of fewer days being proportionally the same.[2] Overtime is then paid for any hours over the set amount for the period, at a rate one and one-half times the "regular rate." 29 U.S.C. § 207(k). *See Kohlheim v. Glynn County*, 915 F.2d 1473, 1476 (11th Cir.1990). The subsection (k) system is, however, only an option; fire fighters can be paid according to other legitimate systems under the Act.

When passed in 1938, the FLSA did not apply to any state or local employers. *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 533, 105 S.Ct. 1005, 1008, 83 L.Ed.2d 1016 (1985). Congress extended some provisions of the FLSA to state and local governments in 1966, and in 1974 Congress expanded the definition of "employer" under the Act to include these entities. *Id;* 29 U.S.C. § 203(d), (x). The special provision covering fire protection employers was also added in 1974.

In 1976 the Supreme Court determined that Congress lacked the authority to impose the requirements of the FLSA on state and local governments when the governments were performing traditional government functions, such as fire prevention. *National League of Cities v. Usery*, 426 U.S. 833, 851, 96 S.Ct. 2465, 2474, 49 L.Ed.2d 245 (1976). After several years of confusion in the lower courts over application of *National League of Cities*, the Court reversed itself and held that state and local governments were subject to the FLSA even when performing government functions. *Garcia*, 469 U.S. at 556–57, 105 S.Ct. at 1020. Thus, when the mandate in *Garcia* issued on April 15, 1985, cities were potentially liable for violations of the 1974 amendments which had been inapplicable to

---

**1.** The purported definition of regular rate, § 207(e), states only that the term includes "all remuneration for employment" and then lists certain exceptions. The subsection does not provide a more precise definition.

**2.** Congress initially set the hours per 28–day period at 216, but permitted the Department of Labor to lower this amount. 29 U.S.C. § 207(k)(1). The Department then lowered the hours per 28–day period to 212. 29 C.F.R. § 553.230.

them during the nine-year reign of *National League of Cities.*

This sudden potential liability stirred congressional action, and in November 1985 Congress delayed the application of the FLSA to the states until April 15, 1986. Federal Labor Standards Amendments of 1985, Pub.L. No. 99–150, § 2(c), 1985 U.S. Code Cong. & Admin.News (99 Stat.) 787, 788.[3] This appeal raises questions regarding actions which, although occurring during this grace period, have affected the fire fighters' overtime payment scheme after the April 1986 effective date of the FLSA.

B

■ The central dispute in this case arose subsequent to the Supreme Court's extension of the FLSA to state and municipal employers in *Garcia.* Prior to *Garcia,* and for several weeks thereafter, the fire fighters were paid on a salary basis. This salary covered a cycle of three pay periods, each involving varied hours over 14 days: one 104–hour period, one 112–hour period, and one 120–hour period. For this 42–day, 336–hour cycle, a typical fire fighter would receive $2,208.45. The actual working time within these periods consisted of rotations of duty in which the fire fighters worked 24 hours, were off duty for 48 hours, worked another 24 hours, and so on.

Upon the issuance of the mandate in *Garcia* on April 15, 1985, the City employed outside counsel to devise a wage plan for the fire fighters which would comply with the FLSA. After reviewing several possible plans which would have required additional funding in order to comply with the overtime payment provisions of the Act, the City, fearing depletion of its coffers, requested a plan which would not affect the City's budget. The City refers to this as a "budget-neutral" plan.

In order to understand the effect of the "budget-neutral" plan as it pertains to the FLSA, we must first outline the intricate contours of the wage payment plans before and after *Garcia.* The post-*Garcia* pay system adopted an hourly wage scale, and was implemented in June 1985. In order to achieve a system which would comport with the FLSA, the City's counsel used the following calculation: Under the old system, 336 hours were worked. Counsel determined that under the FLSA 316 of those hours would be considered regular hours, and 20 would be considered overtime. Because the FLSA overtime requirement demands payment of one and one-half times the regular pay, counsel, for the purpose of calculation, increased the overtime hours by 50%. He then took the fictitious total hours of 346 (316 regular plus 30 adjusted overtime) and divided them into the fire fighters' total pay for that period to produce a per-hour wage of $6.3828. Thus, under the revised system, fire fighters would work the same hours and shifts as before, would receive $6.3828 per hour for 316 regular hours, and $9.5742 ($6.3828 multiplied by 1.5 as required by the FLSA) per hour for 20 hours of overtime. Therefore the total salary and total hours did not change. The payment system and the equivalent hourly rates of pay, however, did change. Under the prior, salary system, the converted hourly rate amounted to $6.57. Under the revised system, the effective rate was decreased to $6.38.

In February 1989 the fire fighters filed suit alleging that the payment scheme used by the City since June 1985 violated the FLSA. The district court agreed. The court found that because the City, when it revised its system, did not calculate the regular hourly rate for the employees based on the 336 actual hours worked, but rather on the fictional 346 hour adjustment, the City's payment scheme violated the Act.[4]

---

**3.** The substantive amendments to the Act included a provision permitting the use of "compensatory time"—the substitution of time off for overtime pay—for state and local governments, and a provision permitting those entities to contract with private parties for their fire and law enforcement services. *See* 29 U.S.C.

§ 207(*o*)–(p). These substantive changes are not at issue in the instant case.

**4.** The district court denied the fire fighters' motion for summary judgment on two other issues: the exclusion of meal times from hours worked and the exclusion of five minutes per day re-

## II

The City's basic argument is not complicated. It contends that it could not have violated the Act because 1) Congress declared that cities and states were not liable under the Act for the period during which the City changed to an hourly system, and 2) the hourly system which has been used since the April 1986 effective date meets the requirements of the Act: the fire fighters are paid more than the minimum wage and receive one and one-half times their hourly rate for overtime. These contentions are correct. As stated above, Congress provided a grace period for the application of the FLSA to the fire fighters. This postponed the viability of the 1974 amendments to the FLSA, as they applied to the fire fighters, until April 1986. The City also correctly states that the payment system it has used since April 1986 pays the fire fighters a legitimate wage and overtime.

The fire fighters ask us to view the situation differently. They do not quarrel with the facial validity of the payment system; rather, they contend that the system was calculated improperly and that an improperly calculated system constituted a violation of the Act at the point at which the Act became effective and the system was being used. In essence they claim that because the system was calculated by using fictitious overtime hours in order to avoid increasing their pay, the system was invalidly created. They argue that an invalidly created system is not saved by the City's ability to conform the payment system to the hourly calculations permitted by the FLSA.

In order for the fire fighters to succeed with this intricate argument, they must show not just that a change in payment systems is invalid under the Act, but also that such a change, occurring prior to the effectiveness of the Act, is invalid. As we discuss below, appellees fail to prove this latter point.

The fire fighters' argument might support the position that the switch to a new payment system, designed to avoid the effect of the FLSA, would violate the Act, were it to occur *subsequent* to the Act's effective date. In *Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 65 S.Ct. 11, 89 L.Ed. 29 (1944), the employer tried to avoid the effect of the Act by artificially lowering the per hour wage according to the "split day" plan, which would operate as follows:[5] Prior to the Act an employee would work 8 hours per day, 6 days per week, at $6.25 per hour. They received no extra pay for overtime. Under the split day plan, the employer would label the first 4 hours of a day "regular" and pay $5.00, and label the last 4 hours "overtime" and pay $7.50. This would produce a system that paid 1.5 times the regular rate for overtime, but still paid the same total amount per week for the same 48 hours. The Court declared such a system invalid, because it enabled the employer "to avoid paying real overtime wages." *Helmerich*, 65 S.Ct. at 13. The Court stated that the company should have calculated the regular rate according to the following scheme: First, divide the hours worked (48 in the above example) by the weekly wage actually paid. This would, in the example we used, equal the $6.25 per hour rate. Then this regular rate was to be applied to the first 40 hours worked during a week, and 1.5 times that rate would apply to the additional, overtime hours. *Id.*

From this case the fire fighters cull a principle that payment schemes designed to avoid the employer's burden of extra payment under the Act are always invalid. As further support for this generalization, they present *149 Madison Ave. Corp. v. Asselta*, 331 U.S. 199, 67 S.Ct. 1178, 91 L.Ed. 1432 (1947), in which the "regular rate" for employees working over 40 hours per week was calculated by dividing the weekly earnings by the hours worked plus one-half of the hours over 40 worked that week. *Asselta*, 331 U.S. at 202, 67 S.Ct. at 1180. The fire fighters contend that these

---

quired as reporting time. These issues are not before us on appeal.

**5.** For convenience, the numbers in this example come from 29 C.F.R. § 778.501.

cases support two elements of their argument: 1) the regular rate must be calculated from actual hours worked rather than from a manipulated calculation,[6] and 2) schemes designed to avoid the burden of the FLSA are not allowed.

■ The fire fighters correctly point out that the regular rate must be calculated from actual hours worked. *See Kohlheim v. Glynn County,* 915 F.2d 1473, 1480 (11th Cir.1990). In *Asselta* the employer was really paying a rate for 46–hour weeks, but it calculated a regular rate, for the purpose of apparent compliance with the FLSA, based on the sum of 40 hours and one-half the hours over 40 worked in a week. *Asselta,* 331 U.S. at 200–02, 67 S.Ct. at 1179–80. The Court held that the regular rate was not based on actual hours, that the calculations were intended to avoid the Act, and that therefore the employer had violated the FLSA. *Id.* at 1180–81.

In the present case, however, the regular rate is calculated from the actual rate. The fire fighters are paid $6.38 per hour for regular hours which they actually work, and one and one-half times that for any overtime. The appellees contend that the City's calculation of the regular rate did not use the actual hours they worked but instead fictitiously increased the overtime hours they worked from 20 to 30. This contention, however, blurs the difference between the City's initial calculation of the regular hourly rate and the ongoing calculation of the regular rate. In both *Asselta* and *Helmerich* the ongoing pay-

ment system violated the Act. In *Asselta* the regular rate varied from week to week depending on the hours an employee was scheduled, and that calculation was not based on actual hours worked. In *Helmerich* the employer continually paid a split-day wage rather than paying regular rates for the first 40 hours of the workweek as required by the Act. Here, however, the current payment system properly considers actual hours worked and properly recognizes the first 40 hours worked as regular hours.

■ Nonetheless the appellees argue that the original setting of the regular rate based on false hours renders the system invalid. Although no Supreme Court case directly supports this argument, the Court's holdings do suggest that, had the original calculation occurred *subsequent* to the Act, it would be invalid. If the Act had applied at the time the City was paying the fire fighters under the old, salary system, the Act would have required that the regular rate be calculated using the pay rate and hours worked under that system. As the Department of Labor has stated, the regular rate in a salaried system is determined by converting the pay to its hourly equivalent. 29 C.F.R. § 778.113(b). Had the Act applied at that time, that is, had it applied upon issuance of the *Garcia* mandate, this salary conversion would have produced a regular rate higher than that adopted by the City.[7] In addition, the calculation of the regular rate would have had to comport with the actual hour requirement, and thus the fictional increase of

---

6. The district court relied on this first argument to find the City's plan invalid. Rather than citing the cases on this issue, the court discussed the Department of Labor's regulations of a similar vein. The court considered the regulation governing *salary* payment schemes and applied it to the City's calculation of its regular rate. *See* 29 C.F.R. § 778.113–114. According to § 778.114, the regular rate for a salary system that compensates weekly but in which employees work varied hours per week is determined by dividing the actual hours worked in a week by the rate per week. The district court stated that because this section requires that actual hours be used to calculate the regular rate and overtime, the City violated the Act by artificially increasing the hours worked for calculation purposes.

The district court erred in its reasoning. As our opinion makes clear, the Act and the Department's regulations did not apply to the City at the time the City adopted its hourly pay system. The court's reliance on the Department's regulations was therefore misplaced. The appellees, however, present several additional arguments to support the result reached by the district court, and it is these arguments to which we address the remainder of our opinion.

7. Prior to June 1985, the fire fighters received $2,208.45 for a 42–day period covering 336 hours. This translated into the equivalent of $6.5728 per hour, which would have been the required regular rate had the Act been in effect at the time.

overtime hours would not have been permitted. *See Asselta*, 331 U.S. at 203–04, 67 S.Ct. at 1181; *Walling v. Helmerich & Payne*, 323 U.S. 37, 40, 65 S.Ct. 11, 13, 89 L.Ed. 29 (1944); 29 C.F.R. §§ 778.113, 778.-500. One court has found a similar one-time calculation of the regular rate to have violated the Act. *See Rhodes v. Bedford County*, 734 F.Supp. 289 (E.D.Tenn.1990) (changeover from salary to hourly system that artificially increased the overtime hours worked for the purpose of calculation, occurring *after* April 15, 1986, violated section 207).

This case, however, does not present an issue of whether the Act barred the calculation of the regular rate based on artificial hours, because here Congress delayed application of the Act until April 15, 1986, ten months after the calculation took place. The City was not under any regular rate obligation in 1985, and the salary system did not have to comport with any hourly conversion under the Department of Labor's regulations. Because the calculation occurred prior to the Act's effective date, the appellees cannot argue that the Act governs those calculations.

■ The fire fighters also argue that even if the calculations made by the City were not invalid because the Act was not yet in effect, *Helmerich* and *Asselta* indicate that the resulting *system* implemented based on the calculations became invalid as soon as it was covered by the Act. Although the fire fighters cite cases in which creative calculations based on artificial figures were invalidated, even if the resulting system appeared to comply with the FLSA, all of these cases, including *Helmerich* and *Asselta,* involved calculations of the regular rate occurring *after* the application of the Act. Neither the Supreme Court nor our circuit has held that calculations occurring *prior* to the Act tainted the otherwise valid system employed under the Act. Rather, the Supreme Court has found that the calculations themselves, and not the

systems produced from the calculations, were the source of the violation of the FLSA. *See Helmerich*, 323 U.S. at 41, 65 S.Ct. at 14. That is, if the calculations occur after the Act takes effect, and the calculations include artificial hours or rates, the calculations, as opposed to the system, violate the Act.[8] In this case, however, the calculations simply were not covered by the Act in June 1985. We can find no authority for finding an otherwise valid system invalid because it was based on calculations made prior to the Act.

The fire fighters, however, present another related argument. Even if the regular rate calculations occurring prior to the Act's effectiveness cannot themselves be subject to the Act, they argue that the City's reduction of the wage rate of its employees, for the sole purpose of avoiding the effects of the Act, is enough to constitute a violation of the FLSA under *Helmerich* and its progeny. The fire fighters are correct in stating that the City's creative calculation of the regular rate was meant to lower the wage rate. The use of the calculation, however, was simply its most convenient method of lowering the equivalent of an hourly rate to the precise level needed to avoid increasing or lowering total salary payments. Rather than using these calculations, the City could have reduced the wage rate to a level it contemplated would produce a total wage equal to the former wage. Instead the City used the hour calculation to achieve the wage rate that would produce the same total wage.

■ Nothing in the Act prohibits such a reduction. Indeed, the Supreme Court has held that schemes designed to maintain the same wage after the Act's effective date cannot be invalid solely because they seek such consistency. *Walling v. A.H. Belo Corp.*, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716 (1942). In addition to holding that the particular payment system used by the em-

---

8. In the recent case of *Kohlheim v. Glynn County,* this circuit applied the FLSA regular rate requirements to a County's payment system because, *after* the effective date of the 1985 amendments, the calculation of overtime was based on artificial hour computations. *Kohlheim,* 915 F.2d 1473, 1481 (11th Cir.1990). The court did not apply the FLSA to calculations occurring *prior* to the effective date.

ployer was valid under the FLSA,[9] the *Belo* Court noted that the purpose of the scheme was to pay the employees the same wage after the effective date of the FLSA as before the Act. The Court then stated that "nothing in the Act bars an employer from contracting with his employees to pay them the same wages that they received previously." 62 S.Ct. at 1226. Thus, if the scheme actually employed is valid under the Act, the fact that the regular rate adopted prior to the Act's effective date produces a total pay no greater than the total pay under a prior system is not enough to establish a violation of the FLSA.

The Wage Hour Administration (the "WHA") came to a similar conclusion in a 1961 Opinion Letter cited by the City. In that letter the WHA approved an employer's lowering of its wage rate prior to the application of the FLSA in order to maintain the same total pay after the application of the Act. The WHA stated that

[t]here is nothing in the Act which prohibits the changing of an employee's hourly wage rate by agreement with the employee. The rate so adopted, however, must be a bona fide rate (not less than the minimum wage applicable under the Act) on which the employee's straight-time and overtime compensation is computed and paid for the hours actually worked.

Wage Hour Administration, Opinion Letter of September 27, 1961.

■ The district court found this letter irrelevant because it referred to an agreement with the employees and there was no such agreement in this case. A similar argument could be made regarding the Supreme Court's reference to a contract in the *Belo* language quoted above. Courts, however, long have held that the question of whether the employer has violated the

FLSA does not hinge on contracts or agreements with the employee. *Barrentine v. Arkansas–Best Freight Sys.*, 450 U.S. 728, 101 S.Ct. 1437, 1445, 67 L.Ed.2d 641 (1981); *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1352 (11th Cir.1982). The Court has held specifically that employees cannot contract out of their FLSA rights. *Barrentine*, 101 S.Ct. at 1445; *Helmerich*, 65 S.Ct. at 14; *Lynn's Food Stores* at 1352. Given the Supreme Court's broad statement in *Barrentine* that "FLSA rights cannot be abridged by contract or otherwise waived because that would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate," 101 S.Ct. at 1445 (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707, 65 S.Ct. 895, 902, 89 L.Ed. 1296 (1945)), we doubt whether the issue of employee agreement is relevant to whether the plan adopted by the City violates the FLSA. Rather, the issue is whether or not the FLSA applies: if it does apply, the parties cannot contract out of the Act; if it does not apply, whether or not the regular rate was implemented by contract is irrelevant because there can be no violation of the Act.

■ Because the question of contract or agreement is not relevant to whether the FLSA covers a given situation, we read the *Belo* language to support the City's argument that it is not a violation of the Act to reduce, prior to the effective date of the Act, the hourly rate paid employees in order to avoid greater payments upon application of the FLSA. Shortly after *Belo* was decided, other circuits adopted the same position. *See General Mills v. Williams*, 132 F.2d 367 (6th Cir.1942); *White v. Witwer Grocer Co.*, 132 F.2d 108 (8th Cir.1942). Although subsequent courts have narrowed the application of *Belo* to specific payment schemes, *see Brennan v. Valley Towing Co.*, 515 F.2d 100, 106 n. 10 (9th Cir.1975) (congressional

9. In *Belo* the Court upheld a dual payment system for irregular hours jobs that operated as follows: By the terms of the employment contract, there existed a specified regular rate wage and overtime pay one and one-half times the regular rate. This regular rate and overtime would apply to a worker's hours if he worked more than 54 hours in a given week. If he worked 54 hours or less, a fixed amount would

be paid that equalled the regular rate plus overtime for the 54 hours. 62 S.Ct. at 1225–26. Payment plans which set a regular rate and guarantee a fixed rate that is never less than the regular rate plus overtime for the hours actually worked were specifically approved in 1949 by Congress for certain situations. *See* 29 U.S.C. § 207(f).

codification of *Belo* contracts by enactment of 29 U.S.C. § 207(f) limited *Belo* to section 207(f) situations); *Foremost Dairies v. Wirtz*, 381 F.2d 653 (5th Cir.1967), the general principle that it is legitimate for employers to lower a pay rate prior to application of the FLSA has not been altered since *Belo*.[10] We therefore conclude that the City's reduction of the hourly rate in June 1985 did not violate the FLSA amendments which did not take effect until April 1986, and we hold that the district court incorrectly found that the FLSA applied to the City's action.

### III

For the reasons stated in this opinion, we REVERSE the district court's grant of summary judgment in favor of the fire fighters on the issue of the regular rate paid under the FLSA. We REMAND for further proceedings consistent with this opinion.

REVERSED and REMANDED.

---

**10.** The fire fighters read *Helmerich* incorrectly when they argue that the Court in that case overruled *Belo*, for the Court expressly stated in *Helmerich* that the split-day plan at issue was invalid because it did not recognize the 40–hour workweek, not because it reduced the regular rate. *Helmerich*, 323 U.S. at 41–42, 65 S.Ct. at 14. The fire fighters also contend that the legislative history behind the 1985 amendments to the FLSA supports their view that the City's wage rate reduction violated the Act. The plain language of the amendments, however, states that the Act would not apply to municipal fire fighters until April 1986. Federal Labor Standards Amendments of 1985, Pub.L. No. 99–150, § 2(c), 1985 U.S.Code Cong. & Admin.News (99 Stat.) 787, 788. When the meaning of a statute is clear on its face, that is the end of our inquiry into the statute's meaning. *K–Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 299–92, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988); *Blue Cross & Blue Shield v. Weitz*, 913 F.2d 1544, 1548 (11th Cir.1990).