**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LOUISE PARTH, individually and on
behalf of all others similarly
situated,
                 *Plaintiff-Appellant,*

          v.

POMONA VALLEY HOSPITAL MEDICAL
CENTER, a California corporation,
                 *Defendant-Appellee.*

No. 08-55022

D.C. No.
CV-06-04703-
MMM

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
Margaret M. Morrow, District Judge, Presiding

Argued and Submitted
April 13, 2009—Pasadena, California

Filed November 18, 2010
Amended December 13, 2010

Before: William C. Canby, Jr., Johnnie B. Rawlinson, and
N. Randy Smith, Circuit Judges.

Opinion by Judge N.R. Smith

19949

## COUNSEL

Frank J. Coughlin, Santa Ana, California, for the plaintiff-appellant.

Richard J. Simmons, Douglas R. Hart, Jason W. Kearnaghan and Beth Anne Scheel, Sheppard, Mullin, Richter and Hampton LLP, Los Angeles, California, for the defendant-appellee.

M. Patricia Smith, Solicitor of Labor; William C. Lesser, Acting Associate Solicitor; Paul L. Frieden, Counsel for Appellate Litigation; and Dean A. Romhilt, Attorney, United States

Department of Labor, for the Secretary of Labor as amicus curiae.

---

## ORDER

The Opinion filed November 18, 2010, slip op. 18571, and appearing at 18586, is amended as follows:

    1. At slip op. 18586 n.3:

      Delete <the> between <to meet> and <three factors>

      Add <are> between <reduced rates> and <bona fide>

      Capitalize <Court> after <decision of this>

      Add <en banc> after <panel rehearing nor>

      Delete <en banc> between <rehearing> and <is warranted>

      n.3 should now read:

The Department's amicus brief (which was submitted at our request in connection with a petition for rehearing) concluded:

> The Hospital's reduction of the nurses' regular hourly wage rates does not appear to be designed to circumvent the Act's overtime requirements and appears to meet three factors identified by the Department for ensuring that reduced rates are bona fide. Furthermore, the panel's decision does not conflict with a decision of the Supreme Court or a decision of this Court. Therefore, neither panel rehearing nor rehearing en banc is warranted.

## OPINION

N.R. SMITH, Circuit Judge:

When an employer changes its shift schedule to accommodate its employees' scheduling desires, the employer may reduce the employee pay rate to pay its employees the same wages they received under the former schedule, so long as the rate reduction was not designed to circumvent the provisions (including overtime) of the Fair Labor Standards Act ("FLSA").

## 1. BACKGROUND

Pomona Valley Hospital Medical Center ("PVHMC") is a hospital located in Pomona, California that has at all relevant times been an "employer" subject to the FLSA. The FLSA requires an employer (such as PVHMC) to pay its employees at one-and-one-half times the employees' "regular rate" for any "employment in excess of eight hours in any workday and in excess of eighty hours in [a] fourteen-day period." 29 U.S.C. § 207(j).[1]

Prior to 1989 or 1990, PVHMC scheduled its nurses to work almost exclusively in 8-hour shifts. However, many PVHMC nurses preferred working 12-hour shifts in order to have more days away from the hospital. The nurses, therefore, requested 12-hour shift schedules. In response to these requests, PVHMC developed and implemented an optional 12-hour shift schedule and pay plan in 1989-90. The pay plan provided nurses the option of working a 12-hour shift schedule in exchange for receiving a lower base hourly salary (that at all times exceeded the minimum wage set forth by the

---

[1]Section 207(j) offers hospitals and certain other institutions to agree with their employees to calculate weekly overtime over a fourteen-day period; overtime then is paid for work exceeding 8 hours in one day or 80 hours in a fourteen day period [the 8/80 plan].

FLSA) and time-and-a-half pay for hours worked in excess of eight per day. The plan prohibited PVHMC from requiring nurses to work additional shifts, absent a medical emergency. If nurses voluntarily work longer than the 12-hour shift, they are paid double the regular rate. The result: nurses, who volunteered for the 12-hour shift schedule, would make approximately the same amount of money as they made on the 8-hour shift schedule (while working the same number of hours over a 14-day period and performing the same duties). After PVHMC made the 12-hour shift schedule available, many PVHMC nurses (though not all) opted to work 12-hour shifts.

In 1993, Louise Parth worked as a nurse in PVHMC's emergency room ("ER"). The nurses in PVHMC's ER (including Parth) voted to implement 12-hour shifts. Parth favored the 12-hour shift format, because it provided her more flexibility in her personal schedule, enabling her to (1) care for her mother, (2) pursue a second nursing job at other facilities, and (3) pick up additional shifts at PVHMC. After voting to implement 12-hour shifts in the ER, Parth subsequently entered into a voluntary agreement with PVHMC that reduced her base hourly wage rate from $22.83 to $19.57 in exchange for the 12-hour shift schedule. Parth has worked the 12-hour shift schedule without interruption since 1993.

In 2003, the PVHMC nurses voted to unionize. Accordingly, PVHMC and the nurses' certified bargaining representative, Service Employees International Union, Local 121 ("Local 121"), negotiated a collective bargaining agreement ("CBA") over a nine-month period. Parth was a member of Local 121's Bargaining Committee and therefore attended most of the negotiation sessions. The resulting agreement provided that PVHMC would increase all nurse salaries—for 8-hour shift employees and 12-hour shift employees alike— by 10% during the CBA's first year, followed by a 5% across-the-board increase for the second and third years. The CBA also reaffirmed PVHMC's practice of paying nurses working

the 12-hour shift schedule a lower base hourly rate than nurses working 8-hour shifts.

The CBA set the base hourly rate for Parth's position at $34.644 (the "base rate"). When Parth works a weekday night, her hourly rate is $39.84 (the "weeknight base rate"). When she works a weekend night, her hourly rate is $46.929 (the "weekend night base rate"). Anytime Parth works more than 8 hours in a shift or 80 hours in a 14-day work period, she receives 1.5 times her "regular rate" of pay for those hours. If Parth works beyond 12 hours in a shift, she is paid "double-time"—double the "regular rate" of pay. If she works an additional shift beyond her regular schedule, she is paid at the higher rate applicable to eight-hour shift employees. PVHMC calculates the "regular rate" of pay by multiplying the total number of hours Parth works at each of the corresponding base rates (base rate + weeknight base rate + weekend night base rate), adding those numbers together, then dividing the total base rate pay by the total number of base rate hours worked. The "regular rate" of pay is therefore something more than the weeknight base rate of pay and will vary according to the number of hours worked at the various base rates. This method is known as the "weighted average method" of determining the "regular rate." *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 596 (2d Cir. 2007). After PVHMC calculates the "regular rate" of pay, it multiplies that number by 1.5 to arrive at the overtime rate.

In 2004, all Local 121 members employed at PVHMC (and in good standing with the union) voted on the proposed CBA after being advised of its contents and being provided the opportunity to review its provisions. After Local 121 ratified the CBA, Local 121 representatives and PVHMC executed the agreement. Parth was a signatory to the agreement. She also testified during her deposition that she was aware the CBA continued PVHMC's pay rate practices. Parth continued to work the 12-hour shift schedule at PVHMC.

Just two years later, Parth filed a putative class action Complaint against PVHMC. She alleged that PVHMC's use of different base hourly rates violates the FLSA in that it denies unionized employees overtime pay, to which they are statutorily entitled. The district court found that Parth met the requirements for conditional class certification to bring the FLSA claim. PVHMC then filed a motion for summary judgment, asserting that its pay practices comply with the FLSA. The district court found that Parth did not adduce evidence or law sufficient to support her claims and therefore granted PVHMC summary judgment. We affirm.

## II.   STANDARD OF REVIEW

We review de novo the district court's order granting summary judgment. *See, e.g.*, *Universal Health Servs., Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004). On review, we must determine, viewing the evidence in the light most favorable to Parth, "whether there are any genuine issues of material fact and whether the district court correctly applied the [relevant] substantive law." *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.   DISCUSSION

Parth argues that PVHMC violated the FLSA by creating a pay plan that pays nurses working 12-hour shifts a lower base hourly rate than nurses who work 8-hour shifts. In support of her argument, Parth contends that: (A) PVHMC cannot reduce the base pay for nurses working the 12-hour shift, (B) the 12-hour base pay rate is an "artifice" designed to avoid the FLSA's overtime and maximum hours requirements, and (C) PVHMC cannot justify the base hourly pay

rate differences between the 8-hour and 12-hour shifts, because nurses working both shifts perform the same job duties.

## A.

**[1]** Parth first asserts that PVHMC cannot reduce the base pay for nurses working the 12-hour shift, because such reduction violates the FLSA. The FLSA requires hospitals on the 8/80 plan to pay employees, who work more than 8 hours in a day or 80 hours in a two-week period, one and a half times the employees' "regular rate" of pay. 29 U.S.C. § 207(j). The Supreme Court interprets "regular rate" to mean "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." *Walling v. Youngerman-Reynolds Hardwood Co, Inc.*, 325 U.S. 419, 424 (1945). Congress's purpose in enacting the FLSA "was to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981). *See also Adair v. City of Kirkland*, 185 F.3d 1055, 1059 (9th Cir. 1999). Under the FLSA, employers and employees are generally "free to establish [the] regular [non-overtime] rate at any point and in any manner they see fit," "[a]s long as the minimum hourly rates established by Section 6 [of the FLSA] are respected." *Youngerman-Reynolds*, 325 U.S. at 424. Though our Circuit has never been asked to determine whether an employer subject to the FLSA may alter the "regular rate" of pay in order to provide employees a schedule they desire, we conclude that such an arrangement does not contravene the FLSA's purpose.

**[2]** Soon after Congress enacted the FLSA, but before it became effective, many employers altered their compensation schemes—by lowering base hourly rates—to ensure that they paid employees the same overall wages after complying with the FLSA's overtime requirements. *See, e.g.*, *Walling v. A. H. Belo Corp.*, 316 U.S. 624, 628-30 (1942). In *Belo*, the

Supreme Court examined these compensation practices and held that, even when the employer's purpose in lowering hourly base rates "was to permit as far as possible the payment of the same total weekly wage after the [FLSA] as before. . . . [N]othing in the [FLSA] bars an employer from contracting with his employees to pay them the same wages that they received previously, so long as the new rate equals or exceeds the minimum required by the [FLSA]." *Id*. at 630.

The Eleventh Circuit followed *Belo*'s holding in a case involving a municipal employer. *See Wethington v. City of Montgomery*, 935 F.2d 222 (11th Cir. 1991). "When passed in 1938, the FLSA did not apply to any state or local employers." *Id*. (citing *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 533 (1985)). Congress expanded the FLSA's definition of "employer" in 1974 to include municipalities. In *Garcia,* the Supreme Court reversed its previously-established precedent and held that state and local governments could be liable for FLSA violations. *Wethington*, 935 F.2d at 224-25. Given the potential for sudden liability, Congress delayed application of the FLSA to municipal employers until April 15, 1986. *Id.* At 225 (citing Fair Labor Standards Amendments of 1985, Pub. L. No. 99-150, § 2(c), 99 Stat. 787, 788). Accordingly, municipal employers such as the City of Montgomery (the "City") became subject to the FLSA as of April 15, 1986.

In *Wethington*, the City endeavored to create and implement a "budget-neutral" plan that would ensure FLSA compliance before April 15, 1986. *Wethington*, 935 F.2d at 225. Prior to *Garcia*, the City paid its fire fighters on a salary basis, which covered "a cycle of three pay periods, each involving varied hours over 14 days: one 104-hour period, one 112-hour period, and one 120-hour period. For this 42-day, 336-hour cycle, a typical fire fighter would receive $2,208.45. The actual working time within these periods consisted of rotations of duty in which the fire fighters worked 24 hours, were off duty for 48 hours, worked another 24 hours, and so on."

*Id.* This scheme did not provide for overtime, so in June 1985, the City adopted a new hourly wage scale to comply with the FLSA. *Id.*

The City determined that under the FLSA, 316 of the 336 hours in the 42-day cycle would be considered regular hours, while 20 would be considered overtime. *Id.* In order to create a new, yet "budget-neutral," pay plan that incorporated time-and-a-half overtime pay, the City, "for the purpose of calculation, increased the [20] overtime hours by 50%. [It] then took the fictitious total hours of 346 (316 regular plus 30 adjusted overtime) and divided them into the fire fighters' total pay for that period to produce a per-hour wage of $6.3828." *Id.* The revised system ensured that City fire fighters would work the same hours and shifts as before, but would receive $6.3828 per hour for 316 regular hours, and $9.5742 ($6.3828 multiplied by 1.5 as required by the FLSA) per hour for 20 hours of overtime, totaling $2,208.4488. *Id.* "Therefore the total salary and total hours did not change. The payment system and the equivalent hourly rates of pay, however, did change. Under the prior, salary system, the converted hourly rate amounted to $6.57. Under the revised system, the effective rate was decreased to $6.38." *Id.* The fire fighters sued the City, making an argument similar to Parth's.

Citing *Belo*, the Eleventh Circuit held that, if a new pay plan "actually employed is valid under the [FLSA], the fact that the regular rate adopted prior to the [FLSA's] effective date produces a total pay no greater than the total pay under a prior system is not enough to establish a violation of the FLSA." *Id.* at 229. The court "read the *Belo* language to support the City's argument that it is not a violation of the [FLSA] to reduce, prior to the effective date of the [FLSA], the hourly rate paid employees in order to avoid greater payments upon application of the FLSA." *Id.*

**[3]** We recognize that the *Belo* and *Wethington* cases dealt with employers creating cost-neutral pay plans that lowered

employees' base hourly rates before becoming subject to the FLSA. However, there is no Supreme Court or Ninth Circuit case that says whether an employer can or cannot do so while subject to the FLSA. Courts around the country have dealt with similar matters, with conflicting results. *Compare*, *e.g.*, *Conner v. Celanese, Ltd.*, 428 F. Supp. 2d 628, 637 (S.D. Tex. 2006) (holding that "an employer can comply with the FLSA by reducing the 'regular' wage paid to its employees and pay overtime at one and one-half times the reduced regular rate such that the total pay to the employees remains the same"), *with Rhodes v. Bedford County, Tenn.*, 734 F. Supp. 289, 292 (E.D. Tenn. 1990) ("The court is of the opinion that defendant's implementation of [a revised pay plan similar to PVHMC's] constitutes a scheme intended to avoid the overtime requirements of § 7. [Even though it] result[ed] in the workers being paid the same amount for the same number of hours worked both before and after the changeover. This was accomplished by artificially altering plaintiffs' 'regular rate.' ").

[4] This case presents us with an issue of first impression. However, we agree with the district court's approach and use Supreme Court precedent on pre-FLSA pay plan alterations for guidance on how to proceed under the facts before us. In *Belo*, 316 U.S. at 630, the Supreme Court stated that "nothing in the [FLSA] bars an employer from contracting with his employees to pay them the same wages that they received previously, so long as the new rate equals or exceeds the minimum rate required by the FLSA." Further, *Youngerman-Reynolds*, 325 U.S. at 424, states that "[a]s long as the minimum hourly rates established by Section 6 [of the FLSA] are respected, the employer and employee are free to establish this regular rate at any point and in any matter they see fit." The PVHMC pay plan conforms with this precedent.

[5] Additionally, we look to the purpose of the FLSA, which is "to ensure that each [covered] employee . . . would receive '[a] fair day's pay for a fair day's work' and would

be protected from the evil of 'overwork' as well as 'under-pay.' " *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1150 (9th Cir. 2000) (quoting *Barrentine*, 450 U.S. at 739). The PVHMC 12-hour shift scheduling practice was first initiated at the nurses' request. The 12-hour shift scheduling practice was then memorialized in a collective bargaining agreement as a result of negotiations between Local 121 and PVHMC (again initiated at the nurses' request). The parties do not dispute that the wages paid under the pay plan are more than the minimum wages under federal law. The pay practice ensures that employees who work beyond eight hours in a day receive time-and-a-half for their efforts. In fact, the nurses are paid daily overtime under this lawful 8/80 schedule. Such overtime is properly calculated based on the actual overtime rate paid to them. The agreement also prohibits the hospital from requiring its nurses work additional shifts, absent a medical emergency. Lastly, it ensures that employees who volunteer to work more than twelve hours in a day receive "double-time" pay. We therefore conclude that the pay practice protects employees from the evils of overwork and underpay, and properly incentivizes PVHMC from overworking its nurses.

Parth is correct that PVHMC was under no obligation to reduce the regular hourly rate of nurses who opted for the 12-hour shifts. PVHMC could have maintained the hourly rate paid to those employees when they were working 8-hour shifts prior to the agreement and absorbed the greater wage costs. However, we do not decide whether the agreement was an ideal, or even preferred, method of contracting; we decide only whether the agreement in question was permissible under the FLSA.

**[6]** Accordingly, we conclude that the arrangement between Parth and PVHMC does not violate the FLSA, because it is not prohibited under the statute, and it does not contravene the FLSA's purpose. Parth cannot cite any relevant case law to support her argument that PVHMC cannot

respond to its employees' requests for an alternative work schedule by adopting the sought-after schedule and paying the employees the same wages they received under the less-desirable schedule. To us, PVHMC's actions seem perfectly reasonable, were requested by the nurses (who work the schedules), and are the result of a bargained-for exchange between the hospital administration and Local 121.[2]

## B.

Parth also argues that the 12-hour shift pay plan is essentially an artifice to avoid paying overtime. The district court examined this argument. It noted that Parth could cite "no authority for the proposition that these facts show the 12-hour rate was a subterfuge that violated the FLSA." We agree.

Parth's argument hinges on two issues: first, whether PVHMC's pay plan contravenes the FLSA's purpose; second, whether the revised "regular rate" is unrealistic and artificial.

[7] Employers cannot lawfully avoid the FLSA's overtime provisions "by setting an artificially low hourly rate upon which overtime pay is to be based and making up the additional compensation due to employees by other means." 29 C.F.R. § 778.500(a). The FLSA also prohibits employers from adopting "split-day" plans in which the employee's hours are arbitrarily divided in such a way as to avoid overtime payments. *Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 40 (1944); 29 C.F.R. § 778.501. Both types of plans work in a manner so that employees do not earn overtime compensation, regardless of how many hours they worked.

---

[2]The employee's consent to the reduced regular rate is a factor in determining whether a reduced rate was bona fide. However, an employee may not waive his or her rights under the FLSA, and agree to a pay plan that violates the FLSA. *See Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740-41 (1981).

An employee's "regular rate" of pay is "the hourly rate actually paid the employee for the normal, non-overtime workweek for which [s]he is employed." *Youngerman-Reynolds*, 325 U.S. at 424. *See also United States v. Rosenwasser*, 323 U.S. 360, 363-64 (1945) (holding that "Section 7(a) [of the FLSA] refers to a 'regular rate' which we have defined to mean 'the hourly rate actually paid for the normal, non-overtime workweek.' " (quoting *Helmerich & Payne, Inc.*, 323 U.S. at 40)). PVHMC's regular rate for 12-hour shift nurses is the rate it pays for the first eight hours of a 12-hour shift. Thereafter, the nurses are paid time and a half pay for the next four hours of their shift and double pay for any work they volunteer to perform after the 12-hour shift.

**[8]** Parth contends that PVHMC's regular rate for nurses working the 12-hour shift is artificial, and therefore unlawful, relying on *Youngerman-Reynolds* to support her argument. *Youngerman-Reynolds* holds that employers cannot skirt the FLSA's requirements by creating a new payment scheme and corresponding lower regular rate that does not reflect the economic reality of the employees' work. *Youngerman-Reynolds*, 325 U.S. at 425. In *Youngerman-Reynolds*, an employer paid its employees a piece rate determined by the number of boards they ricked and stacked. *Id*. at 420-21. When generating the new hourly rate from which it would base overtime compensation under the FLSA, the employer created an arbitrary per-hour piece rate that did not reflect the actual rate at which its employees stacked and ricked wood. *Id*. at 421-23. The Supreme Court held that the scheme violated Congress's goals in enacting the FLSA—"inducing the employer to reduce the hours of work and to employ more [workers]," and "compensating the employees for the burden of a long workweek." *Id*. at 423-24.

**[9]** In its amicus briefing, the Department of Labor recommended that courts review agreements (such as this one) to determine whether the rates are artificial by resolving whether the reduced rate was "bona fide." The Department then

argued that a reduced rate was bona fide if it was "(1) agreed to by the employee; (2) in place for a substantial period of time; and (3) equal to or in excess of the Act's minimum wage." Applying these factors, the PVHMC reduced rate was bona fide.[3] First, the reduced rate was agreed to by the employees through the collective bargaining agreement, in which there appears no evidence of improper influence or inequality of bargaining position. The plan provides employees more scheduling flexibility, allows them to spend less time commuting to work (because they spend fewer days at work), and ensures that PVHMC does not retain an incentive to ask the nurses to work longer hours. Second, the rate has been in place since 1989 or 1990 (and applied to Parth since 1993). Third, the rate paid nurses working the 12-hour shift far exceeds the Act's minimum wage.

[10] Parth also asserts that the regular rate is "unrealistic" and "artificial," in violation of the Supreme Court's admonition in *Helmerich & Payne, Inc.*, 323 U.S. at 42, that a regular rate cannot be derived "in a wholly unrealistic and artificial manner." *See also Adams v. Dep't of Juvenile Justice of New York*, 143 F.3d 61, 67-68 (2d Cir. 1998) (stating that the regular rate may not be set in a "wholly unrealistic and artificial manner" that does not reflect actual practice). The Department of Labor has incorporated *Helmerich & Payne* and *Youngerman-Reynolds* into its regulations, promulgating regulations to guide employers who wish to ensure their regular rates are not deemed artificial or unrealistic. *See* 29 C.F.R. §§ 778.316, 778.500 through 778.503. The regulations set out

---

[3]The Department's amicus brief (which was submitted at our request in connection with a petition for rehearing) concluded:

> The Hospital's reduction of the nurses' regular hourly wage rates does not appear to be designed to circumvent the Act's overtime requirements and appears to meet three factors identified by the Department for ensuring that reduced rates are bona fide. Furthermore, the panel's decision does not conflict with a decision of the Supreme Court or a decision of this Court. Therefore, neither panel rehearing nor rehearing en banc is warranted.

numerous examples by which employers may not avoid over-time, none of which are violated by this plan. These regulations outline that an employer may not set an artificially low hourly rate upon which to calculate overtime; an employer may not decrease the hourly rate in response to the number of hours worked by an employee during the week; the employer may not set the hourly rate for overtime hours, at a rate lower than the regular rate especially when the overtime work is identical to that performed during regular hours; an employer may not agree with employees that overtime hours worked do not count as hours worked; an employer may not set the hourly rate for regular work lower during the weeks when overtime is worked than it would be set in non-overtime weeks; an employer cannot enter into an agreement not to count hours over 40 in order not to pay for extra hours worked; an employer cannot pay an employee the same amount each week (including both non-overtime hours and overtime hours) without regard to the overtime worked. Parth produced no evidence to show that the regular rates, memorialized in the CBA, fell into any of these categories, or were artificially low, or that PVHMC was attempting to set rates in a manner that would relieve it of the obligation to pay time-and-a-half whenever an employee worked more than eight hours in a day.

Lastly, Parth and the other nurses are paid overtime under the PVHMC plan when due. Their overtime wages are calculated according to the standards set forth in 29 C.F.R. § 778.115 and the CBA, (a regular rate for the first eight hours, time and a half for the next four hours, and double pay for any additional hours for which the nurse volunteers). Parth appears to take issue with the manner by which her "regular pay" is calculated, and basically argues that instead of using the weighted average method of determining the regular rate, PVHMC should be required to use the "average blended rate" of pay. The "average blended rate" is the total pay earned by a nurse in a 12-hour shift, divided by 12. To the extent Parth's argument is that average blended rate calculation is the only

permissible "regular rate" of pay under the FLSA, we reject it. The weighted average method of calculation is not prohibited by the FLSA, and has been upheld by other circuits. *See, e.g.*, *Gorman*, 488 F.3d at 596 ("This Court has already validated the weighted average method of determining the regular rate, which we described as 'properly calculated by adding all of the wages payable for the hours worked at the applicable shift rates and dividing by the total number of hours worked.' ") (quoting *Brock v. Wilamowsky*, 833 F.2d 11, 14 (2d Cir. 1987)).

**[11]** The district court noted that "Parth proffer[ed] no argument or support for the proposition that the regular rate for the 12-hour [nurses] was not properly determined, or that overtime pay was not properly calculated using the pay rates set out in the CBA." On appeal, Parth does not challenge the calculation of the overtime rate, except to say that the regular rate upon which it is based is impermissible. Accordingly, we conclude that Parth has not presented any evidence or convincing authority to suggest that PVHMC's pay plan contravenes Congress's goals in enacting the FLSA or is an artifice to avoid paying overtime.

## C.

Parth also argues that PVHMC's pay plan is unlawful, because nurses working both the 8-hour and 12-hour shifts perform the same work, but are paid at different rates. We find no authority that suggests employees cannot be paid different rates for different shifts, and Parth fails to present any authority to the contrary. We do, however, find ample authority from other circuits that supports PVHMC's argument that workers working different shifts may be paid different rates. *See, e.g.*, *Gorman*, 488 F.3d at 595-97; *Conner*, 428 F. Supp. 2d at 636-37; *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1312-13 (11th Cir. 2007). As the Supreme Court has noted, employers and employees are generally free to set the pay

rates if minimum wages and overtime payments are paid when due. *See Youngerman-Reynolds*, 325 U.S. at 424.

**[12]** Parth derives her sole support for this argument from 29 C.F.R. § 778.316, which prohibits employers from setting one hourly rate for the first 40 hours of work and a lower hourly rate for statutory overtime hours. *See* 29 C.F.R. § 778.316. The regulation does not, however, speak to the circumstances present in this case. 29 C.F.R. § 778.316 does not prohibit rate reductions so long as the rate reduction applies generally, to all hours, days, and weeks worked by an employee, without consideration of whether overtime is worked.

## IV.   CONCLUSION

We conclude, as did the district court, that Parth failed to adduce any evidence or authority to support her claim that PVHMC's pay plan violates the FLSA. We conclude that PVHMC was justified in responding to its employees' requests for an alternative work schedule by adopting the sought-after schedule and paying the employees the same wages they received under the less-desirable schedule. There is no evidence to suggest that PVHMC is attempting to avoid paying its employees overtime wages, nor can we find any authority that prohibits PVHMC from paying employees different hourly rates when they are assigned different shifts.

**AFFIRMED.**